UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BEN A. ARGEROPOULOS,

                    Plaintiff,

          -against-                                  Case No. 08-Civ-3760 (JS)(WDW)

EXIDE TECHNOLOGIES and RAY ABRAMS,

                    Defendants.


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT RAY ABRAMS'S MOTION TO DISMISS


**KAUFF McCLAIN & McGUIRE LLP**
Laura Sack (LS 5501)
Roy P. Salins (RS 0793)
950 Third Avenue, 14th Floor
New York, New York 10022
(212) 644-1010
Attorneys for Defendant
Ray Abrams

## PRELIMINARY STATEMENT

Defendant Ray Abrams ("Abrams") submits this memorandum of law in support of his motion to dismiss the Complaint of Ben Argeropoulos ("Argeropoulos") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Amended Complaint purports to assert ten causes of action against Abrams, all of which must be dismissed as a matter of law.

First, under the long-standing precedent of this Circuit, Argeropoulos's Title VII claims against Abrams must be dismissed as a matter of law because individuals cannot be held personally liable under Title VII. Second, Argeropoulos's claims arising under the New York City Administrative Code must be dismissed because Argeropoulos does not allege that any discriminatory or harassing conduct occurred in New York City. Instead, the entirety of Argeropoulos's allegations arise in Suffolk County, New York.

Third, Argeropoulos's New York State Human Rights Law ("NYSHRL") claims of perceived sexual orientation and national origin discrimination against Abrams must be dismissed because Argeropoulos does not allege that Abrams engaged in any discriminatory conduct based on those protected characteristics. Moreover, Argeropoulos cannot be liable under an aider and abetter theory because Argeropoulos does not allege that Abrams actively participated in the alleged discrimination and harassment. Instead, Argeropoulos's claims against Abrams are limited solely to two instances of alleged harassment. For that same reason, Abrams cannot be liable for sexual harassment insofar as his conduct was not sufficiently severe or pervasive to create a hostile work environment.

Fourth, Abrams cannot be liable for retaliation under the NYSHRL because he is not alleged to have subjected Argeropoulos to any adverse employment action. Indeed, nowhere in the Complaint is there a specific instance of any adverse employment action

(whether retaliatory or otherwise) levied by Abrams against Argeropoulos.  Therefore, Argeropoulos's NYSHRL claim against Abrams for retaliation must be dismissed.

## RELEVANT FACTS

Argeropoulos was employed by Defendant Exide Technologies ("Exide") in Suffolk County, New York at all material times. (Compl. ¶ 16). Argeropoulos alleges that the "acts of discrimination" occurred in Suffolk County. (Compl. ¶ 4). Argeropoulos does not allege that any discriminatory, harassing or retaliatory events occurred in New York City.

Argeropoulos asserts that at all material times, Abrams was his manager and supervisor. (Compl. ¶¶ 13-14). Argeropoulos further claims that on February 21, 2007, Abrams "walked up to [Argeropoulos] with a rolled-up component sheet in his hands and smacked the Plaintiff on the buttocks"; and that "Mike Mileto said to [Argeropoulos]: 'the manager wants to see your dick' and . . . Abrams said 'Yeah, whip it out.'" (Compl. ¶¶ 27-28). Argeropoulos does not allege that Abrams engaged in any other discriminatory, harassing or retaliatory conduct.

## ARGUMENT

## I.    THE APPLICABLE MOTION TO DISMISS STANDARD

A complaint is properly dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." The plaintiff has the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A complaint is appropriately dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

2

*Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 44 (2d Cir. 1997). The above-described standards are met here: this Court lacks the power to adjudicate Argeropoulos's Title VII and New York City Human Rights Law ("NYCHRL") claims against Abrams, and Argeropoulos can prove no set of facts in support of his NYSHRL claims of discrimination, harassment, retaliation, or aiding and abetting against Abrams that would entitle him to relief.

## II. ARGEROPOULOS'S TITLE VII CLAIMS AGAINST ABRAMS MUST BE DISMISSED BECAUSE INDIVIDUALS MAY NOT BE SUED UNDER TITLE VII

Argeropoulos asserts claims under Title VII in his Ninth and Tenth causes of action against Exide and Abrams. It is well-established, however, that individuals "may not be held personally liable under Title VII." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995). In *Tomka*, the Second Circuit ruled that only "employer-entities" may be held liable under Title VII for the discriminatory acts of their agents, and that supervisors or agents are not, therefore, subject to individual liability. *Id. See also Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004). Accordingly, Aregropoulos's Ninth and Tenth causes of action must be dismissed as a matter of law as against Abrams.

## III. ARGEROPOULOS'S CLAIMS UNDER THE NEW YORK CITY ADMINISTRATIVE CODE MUST BE DISMISSED BECAUSE NONE OF THE ALLEGED MISCONDUCT OCCURRED IN NEW YORK CITY

It is axiomatic that to state a claim under the NYCHRL, the alleged discriminatory/retaliatory/harassing conduct must have taken place in New York City. *See* N.Y.C. Admin. Code § 2-201 (the New York City Administrative Code applies only within "The City of New York," which is defined as the "territory within the city being all that territory contained within the boroughs of Manhattan, The Bronx, Brooklyn,

3

Queens and Staten Island."). Here, there is no dispute that all of the alleged incidents of discrimination, harassment and retaliation occurred in Suffolk County, New York. (Compl. ¶ 4). Since Argeropoulos does not allege that any discriminatory action occurred in New York City, his Fourth, Fifth, Sixth, Seventh and Eighth causes of action must be dismissed as a matter of law. *See, e.g., Wilder v. Newman*, 05-cv-0478, 2006 U.S. App. LEXIS 3647, at *3 (2d Cir. Feb. 13, 2006) (granting motion to dismiss NYCHRL claim because all of the alleged discriminatory actions occurred outside the jurisdictional boundaries of the New York City Administrative Code).

## IV. ARGEROPOULOS'S CLAIMS AGAINST ABRAMS UNDER THE NEW YORK STATE HUMAN RIGHTS LAW MUST BE DISMISSED

### A. Argeropoulos's NYSHRL Claims Against Abrams Alleging National Origin Discrimination, Perceived Sexual Orientation Discrimination, Sexual Harassment, and Aider & Abetter Liability Must be Dismissed

In Count One of the Complaint, Argeropoulos alleges that Abrams discriminated against him on the basis of perceived sexual orientation and national origin, and that Abrams sexually harassed Argeropoulos. (Compl. ¶¶ 61-64). Furthermore, Argeropoulos alleges in Count Three of the Complaint that Abrams is liable for aiding and abetting the alleged discriminatory and harassing conduct. (Compl. ¶¶ 68-70). Each of these causes of action must be dismissed as a matter of law for failure to state a claim against Abrams upon which relief can be granted.

#### 1. National Origin Discrimination, Perceived Sexual Orientation Discrimination, and Aider & Abetter Liability

Argeropoulos's claims that Abrams discriminated against him on the basis of perceived sexual orientation and national origin, and that Abrams aided and abetted Exide's discriminatory actions against Argeropoulos must be dismissed as a matter of law because Argeropoulos fails to cite to any discriminatory or harassing conduct that

4

Abrams took against him because of those protected characteristics. It is well-settled that "for an individual to be liable for discriminatory conduct under the [NYSHRL], that individual must have actively participated in the discrimination." *Hirsch v. Columbia Univ.*, 293 F. Supp. 2d 372, 377-78 (S.D.N.Y. 2003) (citing *Tomka*, 66 F.3d at 1317); *Garone v. United Parcel Serv., Inc.*, 00-cv-6722, 2001 U.S. Dist. LEXIS 12175, at *11-13 (E.D.N.Y. July 12, 2001).[1] Here, in his 93-paragraph Complaint, Argeropoulos only cites to two specific allegations of misconduct by Abrams, both of which are completely unrelated to perceived sexual orientation or national origin. First, he alleges that Abrams allegedly smacked Argeropoulos on the buttocks with a rolled-up component sheet. (Compl. ¶ 27). Second, he contends that after Mike Mileto allegedly said that "the manager wants to see your dick," Abrams allegedly said "Yeah, whip it out." (Compl. ¶ 28). There are no other allegations that Abrams engaged in any other discriminatory or harassing behavior. As such, there is no allegation in the Complaint that Abrams actively participated in the alleged discrimination or harassment based on sexual orientation or national origin. *Id.* Therefore, Abrams cannot be liable for perceived sexual orientation or national origin discrimination or for aiding and abetting perceived sexual orientation or national origin discrimination.

---

[1] Furthermore, the NYSHRL claim against Abrams as an "aider and abettor" must be dismissed as a matter of law because there was no discrimination for Abrams to "aid" or "abet." Under the NYSHRL, "liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." *Dewitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999). As discussed in Exide's moving papers, Argeropoulos is unable to establish any claim of discrimination or harassment other than sexual orientation harassment under the NYSHRL, a claim which Argeropoulos does not clearly assert. (*See* Docket No. 7). Since none of Argeropoulos's allegations against Abrams concern sexual orientation harassment, Abrams cannot be found liable as an aider and abettor.

5

### 2.    *Sexual Harassment*

Count One also purports to allege hostile work environment sexual harassment against Abrams.  This claim must also be dismissed as against Abrams.

To establish hostile work environment sexual harassment, a plaintiff must show that the work environment is one "permeated with 'discriminatory intimidation, ridicule, and insult'" which is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Garone*, 2001 U.S. Dist. LEXIS 12175, at \*5 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65-67 (1986)); *see also Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).  Other than the two aforementioned incidents of alleged misconduct, Argeropoulos does not allege that Abrams discriminated against or harassed him in any way whatsoever.[2]  *(See* Compl. ¶¶ 27-28).  Clearly, these two alleged incidents fall far short of the level of severity or pervasiveness needed to create a legally actionable hostile or abusive environment under *Harris*. Thus, the sexual harassment claim against Abrams in Count One must be dismissed as a matter of law.  *See, e.g., Raum v. Laidlaw Ltd.*, 98-9091, 1999 U.S. App. LEXIS 8219 (2d Cir. Apr. 23, 1999) (affirming dismissal of NYSHRL hostile work environment claim under Fed. R. Civ. P. 12(b)(6) on the grounds, *inter alia*, that plaintiff's allegation that he was repeatedly subjected to obscene gestures and comments was not severe or pervasive enough to survive a motion to dismiss); *Garone*, 2001 U.S. Dist. LEXIS 12175,

---

[2] Argeropoulos's assertion that the allegations in the Complaint are "just some examples," (*see* Compl. ¶¶ 25, 44) does not meet the requirement that he plead a "plausible" claim. *See Dean v. Westchester County District Attorney's Office*, 119 F. Supp. 2d 424, 429 (S.D.N.Y. 2000) (granting motion to dismiss under Fed. R. Civ. P. 12(b)(6) on the grounds that plaintiff's allegation that the supervisor "continued to make remarks and offensive comments to plaintiff" was not specific enough to state a cognizable claim); *Salvatore v. KLM Royal Dutch Airlines*, 98-Civ-2450, 1999 U.S. Dist. LEXIS 15551, at \*28 (S.D.N.Y. 1999) (granting motion to dismiss under Fed. R. Civ. P. 12(b)(6) on the grounds that plaintiff's conclusory statement in the complaint that the harassment was "repeated" and "recurrent" were unsupported by the plaintiff's specific factual allegations).

6

at *5-7. *See also Tomka*, 66 F.3d at 1305 n. 5 ("isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonable be termed pervasive.").

Furthermore, Argeropoulos's hostile work environment sexual harassment claim against Abrams fails because it does not satisfy the factors for establishing same-sex sexual harassment. The Complaint is wholly devoid of any allegation that Abrams is homosexual or motivated by sexual desire; that Abrams's alleged conduct was motivated by any general hostility towards men; or that Abrams treated women differently than men. Thus, this claim must be dismissed for failure to allege any facts that would support a same-sex sexual harassment claim. *See Oncale v. Sundowner Offshore Servs., Inc.*, 532 U.S. 75, 80-1 (1998); *see also Borski v. Staten Island Rapid Transit*, 04-cv-3614, 2006 U.S. Dist. LEXIS 89242, at *9-11 (E.D.N.Y. Dec. 11, 2006). (dismissing same-sex sexual harassment action on the grounds that the plaintiff failed to provide any evidence that the alleged conduct was based on the plaintiff's sex).

In *Borski*, this Court dismissed a same-sex sexual harassment case under Fed. R. Civ. P. 12(b)(6), where the plaintiff had alleged far more severe and pervasive harassment than the two alleged incidents of harassment at issue here. For example, Borski claimed that "sexually explicit material was *routinely* passed around the Defendant's office" and that his supervisor "wrote derogatory, vile and insulting material on company stationary and posted it on a bulletin board." *Id.* at *2. (emphasis added). Notwithstanding those allegations, this Court found that: (i) the plaintiff did not allege that his supervisor was homosexual or motivated by sexual desire; (ii) the plaintiff did not allege that any of the alleged conduct was motivated by a general

7

hostility towards men; or (iii) that the harassers discriminated between men and women. *Id.* at 10-11. Thus, this Court granted defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that "Plaintiff has not alleged any facts in the Complaint that indicate he was discriminated against because of his sex." *Id.* at *14.[3]

Argeropoulos has similarly failed to assert any facts that Abrams discriminated against him because of his sex. Accordingly, the NYSHRL sexual harassment claim in Count One must be dismissed as against Abrams.

B.      Argeropoulos's Claims of Retaliation
        Against Abrams Must be Dismissed

In Count Two, Argeropoulos alleges that he was retaliated against for complaining about discriminatory activity in violation of the NYSHRL. This claim must be dismissed as a matter of law insofar as Argeropoulos fails to allege that Abrams subjected him to any adverse employment action.[4] It is well-settled that to establish a claim of retaliation under the NYSHRL, a plaintiff must allege that: (i) he was engaged in a protected activity; (ii) the employer was aware of the protected activity; (iii) that the employee suffered an adverse employment action; and (iv) there was a causal connection between the protected activity and the adverse employment action. *Tomka,* 66 F.3d at 1308. As the Supreme Court recently held, an adverse employment action must be "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006) (internal citations

---

[3] Although Borski styled his action as one alleging sex discrimination, this Court treated it as a hostile work environment claim. *Id.* at *8 n. 4.

[4] Argeropoulos cannot claim he was constructively discharged by Exide because he is still an Exide employee, currently on Workers' Compensation leave. (Compl. ¶ 42). *See Tavolini v. Mount Sinai Med. Ctr.,* 26 F. Supp. 2d 678, 682 (S.D.N.Y. 1998) (dismissing plaintiff's constructive discharge claim because he was still employed by defendant).

8

omitted). Argeropoulos fails to allege that Abrams subjected him to anything negative as a result of his alleged protected activity, including any repercussions that would dissuade a reasonable co-worker from engaging in similar protected activity. In the absence of any such allegation concerning Abrams, Argeropoulos's retaliation claim against Abrams fails under the *Burlington Northern* standard and must be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant Ray Abrams respectfully urges that the Court issue an Order granting his Motion to Dismiss and dismissing the Complaint against Abrams in its entirety, awarding to him his costs, including attorneys' fees, and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      November 20, 2008

                         KAUFF McCLAIN & McGUIRE LLP

By:_____
           Laura Sack (LS 5501)
           Roy P. Salins (RS 0793)
           950 Third Avenue, 14th Floor
           New York, New York 10022
           (212) 644-1010
           Attorneys for Defendant
           Ray Abrams

9

LEXSEE 2006 US APP LEXIS 3647

**NORMA WILDER, Plaintiff-Appellant, v. RALPH NEWMAN, INGRID RICTER,
MARK LAWSON, IRENE MADERA, THE NEW FULTON COMMONS CO.,
Defendants-Appellees.**

**No. 05-0478-cv**

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

*167 Fed. Appx. 828; 2006 U.S. App. LEXIS 3647*

**February 13, 2006, Decided**

**NOTICE:**      [**1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:**   Appeal from the United States District Court for the Eastern District of New York. (Seybert, J.).

**COUNSEL:** NORMA WILDER, Plaintiff-Appellant, Pro se, Malone, N.Y.

For    Defendants-Appellees:    DOUGLAS    E. MOTZENBECKER, Podvey, Sachs, Meanor, Catenacci, Hildner, Cocoziello & Chattman, P.C., Newark, N.J.

**JUDGES:** PRESENT: HON. GUIDO CALABRESI, HON. CHESTER J. STRAUB, HON. RICHARD C. WESLEY, Circuit Judges.

**OPINION**

[*829] **SUMMARY ORDER**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Norma Wilder ("Wilder"), proceeding *pro se*, appeals the district court's dismissal of her complaint alleging discrimination and unfair labor practices by her former employer The New Fulton Commons, Co. and several employees of New Fulton

Commons: Ralph Newman, Ingrid Richter, Mark Lawson, and Irene Madera ("Defendants-Appellees"). Wilder alleged discrimination in violation of the Americans with Disability Act of 1990 (ADA), *42 U.S.C. § 12101 et seq.* [**2] ; discrimination in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.*; and unfair labor practices, treated as a claim under the National Labor Relations Act, *29 U.S.C. § 151 et seq.* Pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, the district court granted Defendants-Appellees' motion to dismiss as to all claims on November 30, 2004. We assume the parties' familiarity with the facts, the procedural history, and the issues on appeal.

With respect to Wilder's federal claims, we affirm the judgment of the court below for substantially the reasons given by the district court. On appeal, Wilder also asks this court to construe her complaint as having raised related claims under New York law, although her filings and arguments below did not address such claims, and the district court did not pass on their merits. We have long held that *pro se* litigants, particularly those claiming discrimination, *see Ortiz v. McBride, 323 F.3d 191, 194 (2d Cir. 2003)*, "generally are entitled to a liberal construction of their pleadings, which [**3] should be read to raise the strongest arguments that they suggest," *Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)* (internal quotation marks omitted). In general, however, we do not consider an issue that was not passed upon below. *See Booking v. Gen. Star Mgmt. Co., 254 F.3d 414, 418 (2d Cir. 2001)*.

In this respect, we note in passing that Wilder's state claims are likely flawed. The New York Human Rights Law made sexual orientation, which is the basis of

167 Fed. Appx. 828, *829; 2006 U.S. App. LEXIS 3647, **3

Wilder's claims, a protected trait as of January 16, 2003. *See N.Y. Exec. Law § 296(1)(a)* (McKinney 2005). The incidents aggrieved in the present action occurred in late 2002, and the law applies prospectively only. *See Logan v. Salvation Army, 10 Misc. 3d 756, 809 N.Y.S.2d 846, N.Y.S.2d , 2005 WL 3076308, at *3 (Sup. Ct. Nov. 16, 2005)*. With respect to her claim arising under the New York City Human Rights Law, *see* New York City Administrative Code *§ 8-502(a)*, there is no dispute that the incidents in this case occurred in Nassau County, which is outside the jurisdictional boundaries of the New York City Administrative Code. *See N.Y. Gen. Mun. Law*

*§ 239-s* [**4] (McKinney 2005); *see also Levy v. City Comm'n on Human Rights, 85 N.Y.2d 740, 743, 651 N.E.2d 1264, 628 N.Y.S.2d 245 (1995)* ("The Administrative Code . . . vests in the New York City Commission on Human Rights the authority and jurisdiction to eliminate and prevent discrimination within the City of New York.").

We have considered all of Wilder's arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the district court.

LEXSEE 2001 US DIST LEXIS 12175

**LINDA GARONE, Plaintiff, -against- UNITED PARCEL SERVICE, INC., STAN
SCIGOWSKI, WILLIAM BURGESS, THOMAS McNAMARA, THOMAS
DULLAHAN, BRUCE PACE, COSMO DiMARCO, LARRY MAYER, and ANDY
SCHWARTZ, Defendants.**

**00-CV-6722 (ILG)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW
YORK**

*2001 U.S. Dist. LEXIS 12175*

**July 12, 2001, Decided**

**SUBSEQUENT HISTORY:** Summary judgment
granted by *Garone v. UPS, 2006 U.S. Dist. LEXIS 43371
(E.D.N.Y., June 27, 2006)*

**DISPOSITION:** [*1] DiMarco's motion to dismiss
granted and his motion for *Rule 11* sanctions denied.

**COUNSEL:** For LINDA GARONE, plaintiff: Ralph
Angelo Somma, Somma, Zabell & Associates, LLP,
Farmingdale, NY.

For UNITED PARCEL SERVICE, INC., STAN
SCIGOWSKI, WILLIAM BURGESS, THOMAS
DULLAHAN, BRUCE PACE, LARRY MAYER,
ANDY SCHWARTZ, defendants: Kathleen McKenna,
Esq., Proskauer Rose, LLP, New York, NY.

For COSMO DiMARCO, defendant: Robert M. Rosen,
Rosen, Leff, Esqs., Hempstead, NY.

**JUDGES:** I. Leo Glasser, United States District Judge.

**OPINION BY:** I. Leo Glasser

**OPINION**

*MEMORANDUM & ORDER*

GLASSER, United States District Judge:

*SUMMARY*

Plaintiff Linda Garone brings this employment
discrimination action pursuant to those provisions of Title
VII of the Civil Rights Act of 1964, *42 U.S.C. §§
2000e-2(a)(1), 2000e-3(a)*, that proscribe a hostile work
environment and retaliation; the New York State Human
Rights Law, *N.Y. Exec. Law § 296* ("NYSHRL"); and the
New York City Human Rights Law, N.Y. City Admin.
Code §§ 8-107 ("NYCHRL"). Individual defendant
Cosmo DiMarco moves to dismiss Garone's second and
third causes of action for gender discrimination, and fifth
and sixth causes [*2] of action for retaliation pursuant to
*Fed. R. Civ. P. 12(b)(6)*. DiMarco also alleges that
Garone failed to adequately perform a pre-filing
investigation of her claims against him and thus seeks
fees and costs under *Fed. R. Civ. P. 11*. For the reasons
set forth below, defendant's motion to dismiss is granted,
and his motion for sanctions is denied.

*BACKGROUND*

Garone began working for the United Parcel Service
Inc. ("UPS") in November 1993 as an Office
Management Specialist. (Compl. P 18) To summarize,
Garone alleges that she was subjected to a hostile work
environment created in part by co-defendants Stan
Scigowski's and Thomas Dullahan's sexually harassing
and derogatory remarks, and suffered retaliation for
complaining to various UPS supervisors and managers
about such remarks. (*Id.* PP 21, 25-26) Defendant
Scigowski was Garone's supervisor in 1996 and 1997 and
called her and other female employees in her work area
"the Brooklyn Bimbettes" and "the Office Bitches." (*Id.* P
21) Garone complained about Scigowski's behavior to

defendant William Burgess, a UPS Business Manager, who allegedly replied, "Keep quiet, otherwise they will say you are a problem." (*Id.* P [*3] 22) Garone further alleges that she was denied the opportunity to become an "On-Car Supervisor" because she was female, and that her complaints to Burgess and defendant Thomas McNamara, another UPS manager, about the denial were met again by the comment, "Keep quiet, otherwise they will say you are a problem." (*Id.* PP 23-24) In September 1997, Garone's new supervisor, defendant Dullahan, made a series of comments to Garone including, "Hey baby, wear skirts so we can see your legs," and "[you] need[] a man." (*Id.* P25) Garone directly complained to Dullahan and requested him to stop, to no avail. (*Id.* P 26) Garone again complained in October 1998, this time to defendant Bruce Pace, Division Manager, and he transferred her to another department.

Against this background, Garone's sole mention of DiMarco in her 62 paragraph Complaint is that "in January 1999, [] DiMarco, another supervisor, [said to] Plaintiff, 'I had better watch what I say in front of you. You might start screaming sexual harassment. . . .'" (*Id.* P 29(a)) Garone's Complaint documents subsequent acts of retaliation and harassment by other co-defendants, and alleges that because of these acts, she [*4] was constructively discharged in April 1999. (*Id.* PP 29(b)-32) Accordingly, Garone brought this employment discrimination action against UPS, DiMarco, and seven other UPS employees.

## DISCUSSION

DiMarco moves to dismiss the Complaint pursuant to *Fed. R. Civ. P. 12(b)(6)* "for failure to state a claim upon which relief can be granted," arguing that this one alleged statement does not amount to actionable sexual harassment; that Garone fails to allege facts sufficient to maintain a retaliation claim; that he cannot be liable as an individual because he is not subject to suit under *Patrowich v. Chemical Bank, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984)*; and because he did not "aid and abet" the other defendants' discrimination. A court must, in deciding such a motion, accept the averments of the complaint as true and construe all reasonable inferences in favor of the nonmoving party. *See Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)*. Thus, a complaint should be dismissed on a motion under *Rule 12(b)(6)* only if "it appears beyond doubt that the plaintiff can prove no set of facts in

support of [her] claim which [*5] would entitle [her] to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*.

### I. Hostile Work Environment

Since New York courts generally look to federal law in adjudicating discrimination claims under the NYSHRL and the NYCHRL, *see Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1177 (2d Cir. 1996)*; *Ferrante v. American Lung Assoc., 90 N.Y.2d 623, 665 N.Y.S.2d 25, 28, 687 N.E.2d 1308 (1997)*, Garone's claims are evaluated under the same standards as a Title VII claim. A hostile work environment is one "permeated with 'discriminatory intimidation, ridicule, and insult'" which is "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)* (quoting *Meritor Savs. Bank v. Vinson, 477 U.S. 57, 65-67, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986))*.

DiMarco contends that this one comment attributed to him is so not severe or pervasive as to create a hostile or abusive environment under *Harris* or *Faragher v. City of Boca Raton, 524 U.S. 775, 786, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998)*. [*6] Garone insists that DiMarco's comment considered against the totality of the circumstances reveal that DiMarco was complacent about the harassment and therefore is liable for perpetuating a hostile work environment. In *Harris*, the Court announced that the district courts should look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," to determine whether an environment is hostile or abusive. *510 U.S. at 23*. The totality of the circumstances inquiry is inapplicable here. The totality of the circumstances inquiry is relevant insofar as the question before a court is the liability of an employer because the *Harris* court was interpreting *42 U.S.C. § 2000e-2(a)(1)* which creates *employer* liability for discrimination. The issue before this court is the liability of an employee in his individual capacity under New York State and New York City law. Garone attempts to transform the innocuous into the sinister by arguing that DiMarco [*7] is liable for his "complacency" and "perpetuation of harassment" based on the acts of UPS and the other individual defendants.

2001 U.S. Dist. LEXIS 12175, *7

The court agrees with DiMarco that his isolated comment does not create an actionable hostile work environment claim. DiMarco's statement that, "I had better watch what I say in front of you. You might start screaming sexual harassment," is arguably, not even an offensive utterance that altered the conditions of Garone's employment. In *Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 82, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998)*, the Court advised the lower courts to be cognizant of the realities of human interaction: "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." That observation is exquisitely applicable here and DiMarco's motion to dismiss Garone's second and third causes of action for gender discrimination is granted.

II. *Retaliation*

The standard of proof for retaliation claims brought under Title VII, the [*8] NYSHRL, and the NYCHRL require a plaintiff to present a *prima facie* case by establishing the following elements: (1) she engaged in conduct protected by the NYSHRL and NYCHRL known to the defendant; (2) she suffered an adverse action subsequent to such activity; and (3) there was a causal link between the protected conduct and the adverse action. *See Cruz v. Coach Stores, Inc., 202 F.3d 560, 563 n.1 (2d Cir. 2000)*. DiMarco first argues that Garone's retaliation claims must be dismissed because she has failed to allege whether he knew about her participation in a protected activity, that is, her complaints to Burgess, Dullahan, and Pace. Despite DiMarco's argument, it is plain from his statement itself that he knew of Garone's complaints.

Next, DiMarco contends that Garone has not alleged that she suffered an adverse employment action. A plaintiff sustains an adverse employment action if she endures a "materially adverse change" in the terms and conditions of employment. *See Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999)* (relying on *Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)*). [*9] "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished

material responsibilities, or other indices . . . unique to a particular situation." *Crady, 993 F.2d at 136*. It is difficult to imagine that DiMarco's isolated comment created a material adverse change in Garone's terms and conditions of employment. Garone unavailingly argues that her suffering of "a further litany of harassment and discrimination" by other defendants, and her constructive discharge as alleged in paragraph 32 of her Complaint also satisfy the "adverse employment action" element of the retaliation claim. [1] Thus, Garone has failed to allege the second element of a retaliation claim.

> 1  Constructive discharge can be an adverse employment action attributable to the employer. *See e.g., Richardson v. New York*, No. 94-CV-1065, *1997 U.S. Dist. LEXIS 20719* at **21-22 (N.D.N.Y. Dec. 22, 1997), *aff'd in part, vacated in part, 180 F.3d 426 (2d Cir. 1999)*.

[*10] DiMarco lastly argues that Garone has failed to plead sufficient facts to establish a causal connection between the protected activity and the adverse employment action. Even if DiMarco's one comment were deemed to be an adverse employment action, the temporal proximity between Garone's October 1998 complaint to Pace and DiMarco's January 1999 comment upon which she relies does not satisfy the causation prong. Evidence of temporal proximity alone, questionably applicable here, is insufficient as a matter of law to prove the causal connection element of a retaliation claim. *See Griffin v. Ambika Corp., 103 F. Supp. 2d 297, 312 (S.D.N.Y. 2000)*. Accordingly, DiMarco's motion to dismiss Garone's fifth and sixth causes of action for retaliation is granted.

III. *Individual Liability*

In her opposition to DiMarco's motion; Garone seeks to hold him individually liable as an aider and abetter of unlawful discriminatory practices under the NYSHRL which states, "it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so," *N.Y. Exec. Law § 296(6)*, [*11] and the similarly drafted NYCHRL. *See* N.Y.C. Admin. Code § 8-107(6). DiMarco urges the court to dismiss Garone's complaint based on *Trovato v. Air Express Int'l, 238 A.D.2d 333, 655 N.Y.S.2d 656 (2d Dep't 1997)*, in which the court limited individual liability under the NYSHRL for aiding or abetting to employee-owners or employees with specific authority to

Case 2:08-cv-03760-JS -WDW Document 11 Filed 11/20/08 Page 18 of 43

Page 4
2001 U.S. Dist. LEXIS 12175, *11

make personnel decisions. *See 655 N.Y.S.2d at 657* ("We reject the plaintiffs' contention that the individual defendants could be held liable as aiders and abettors pursuant to Executive Law § 296(6). . . . To find a coemployee liable as an aider and abettor would ignore the statutory and legal authority limiting the parties who may be sued for employment discrimination. . . ."). Prior to *Trovato*, the Second Circuit in *Tomka v. Seiler Corp., 66 F.3d 1295, 1317*, held that any individual, regardless of their status within the workplace, may be liable for aiding and abetting discriminatory conduct prohibited by the NYSHRL if such individuals "actively participated in the conduct giving rise to a discrimination claim." The *Tomka* court suggested that the use of "any person" in the text of § 296(6) [*12] was incompatible with limiting aiding and abetting liability to employee-owners and employees with authority over personnel decisions. *See id.*

Since *Trovato*, the Appellate Division, Second Department of the Supreme Court of New York has qualified its previous holding,

> the broad language in [*Trovato*] should not be read to rule out a cause of action pursuant to . . . § 296(6) against a coemployee who is alleged to have actively aided and abetted the employer in acts prohibited under [the NYSHRL]. . . . In citing cases which stand for the rule that a party may state a cause of action for aiding and abetting under . . . § 296(6) *(see, [Tomka] . . . )*, this Court . . . recognized that there can be factual circumstances which support the 'aiding and abetting' theory.

*Murphy v. ERA United Realty, 251 A.D.2d 469, 674 N.Y.S.2d 415, 417-18* (2d Dep't 1998). Other New York courts have maintained the position in *Trovato, see Foley v. Mobil Chem. Co., 214 A.D.2d 1005, 626 N.Y.S.2d 908, 909* (4th Dep't 1995), and the disagreement among the courts as to who may be individually liable for aiding and abetting has been noted [*13] in several cases. *See, e.g., Lewis v. Triborough Bridge & Tunnel Auth., 77 F. Supp. 2d 376, 380 n.6 (S.D.N.Y. 1999).*

Under either *Trovato* or *Tomka*, DiMarco cannot be found individually liable. *Trovato* is not applicable because there are no allegations in the Complaint that DiMarco had any ownership interest in UPS or otherwise

had authority to make personnel decisions about her. *Tomka* is similarly inapplicable because DiMarco's one isolated comment can hardly be regarded as "active participation" in the alleged discriminatory conduct of others. Thus, DiMarco's motion to dismiss must be granted for the additional reason that he may not be held individually liable under New York State and New York City law.

*IV. Rule 11 Sanctions*

Finally, DiMarco requests attorney's fees, costs, and disbursements under *Fed. R. Civ. P. 11(c)* from Garone for her failure to investigate whether there was a reasonable basis for her claim against him. *Rule 11*, which is designed to curb abusive litigation and deter baseless filings, *see Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 552, 112 L. Ed. 2d 1140, 111 S. Ct. 922 (1991)*, [*14] contains a twenty-one-day "safe harbor" period in which the party may withdraw any frivolous or legal contentions. *See Fed. R. Civ. P. 11(c)(1)(A); Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1327-28 (2d Cir. 1995)*. Under the Rule, litigants seeking sanctions must file the motion "separately from other motions or requests," *Fed. R. Civ. P. 11(c)(1)(A)*, and must not file the motion with the court until they have afforded their adversary the twenty-one-day period in which to withdraw or modify his submissions. *See Bowler v. U.S. Immigration & Naturalization Serv., 901 F. Supp. 597, 604 (S.D.N.Y. 1995)* (declining to impose sanctions under *Rule 11(c)(1)(A)* where the party was not afforded the twenty-one day safe harbor period). DiMarco has not complied with the procedural requirements of the safe-harbor provision and the motion is therefore denied.

*CONCLUSION*

For the foregoing reasons, DiMarco's motion to dismiss is granted and his motion for *Rule 11* sanctions is denied.

SO ORDERED.

Dated: July 12th, 2001

Brooklyn, New York

I. Leo Glasser

[*15] United States District Judge

LEXSEE 1999 U.S. DIST. LEXIS 15551

VITO SALVATORE, DEBRA ROTA, JOHN FRUHLING, MAURA KANE,
PATRICIA MANFREDI, ROSEMARIE CONCA, PERRY COCOZZO, KASH
YAGNIK, BARBARA DERN, MICHAEL GOUSKOS, ELEANOR GRECO,
DWAYNE PETERKIN, ADELE KRONER, ANDREW BROSNAN, BEVERLY
GORE, BARBARA MAIER, ALEX OMAR BENAISSA, and VINCENT TRICOLI,
Plaintiffs, -against- KLM ROYAL DUTCH AIRLINES and EDUARD
WAGEMANS, Defendants.

98 Civ. 2450 (LAP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

*1999 U.S. Dist. LEXIS 15551; 81 Fair Empl. Prac. Cas. (BNA) 873*

September 30, 1999, Decided
September 30, 1999, Filed

**DISPOSITION:** [*1] KLM's motion to dismiss granted and Wagemans' motion to dismiss granted in part and denied in part.

**COUNSEL:** For KLM ROYAL DUTCH AIRLINES, defendant: Michael J. Michael J. DiMattia, Ross & Hardies, New York, NY.

**JUDGES:** LORETTA A. PRESKA, United States District Judge.

**OPINION BY:** LORETTA A. PRESKA

**OPINION**

*MEMORANDUM AND ORDER*

LORETTA A. PRESKA, United States District Judge:

Plaintiffs brought this suit against their current and former employer KLM Royal Dutch Airlines ("KLM") and a former employee of KLM who was their supervisor, Eduard Wagemans ("Wagemans") (collectively, "defendants"). Plaintiffs allege that the defendants engaged in sexual harassment, discrimination, retaliation and constructive discharge in violation of Title

VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.* ("Title VII"), New York State Human Rights Law, *N.Y. Exec. Law §§ 290 et seq.* ("Human Rights Law" or "HRL"), and New York City Administrative Code, Title 8, §§ 8-101 *et seq.* ("City Human Rights Law" or "City HRL"). Plaintiffs also assert various state law claims.

KLM now moves to dismiss most of the first, the entire fourth, sixth, seventh and eighth causes of [*2] action asserted in plaintiffs' Third Amended and Verified Complaint (the "Complaint" or "Compl.") pursuant to Rule 12(b)(6). Wagemans moves to dismiss the first, second, third, fifth and sixth causes of action, and joins in KLM's motion. For the reasons set forth below, KLM's motion to dismiss is granted and Wagemans' motion to dismiss is granted in part and denied in part.

**BACKGROUND**

The following facts are taken from the allegations in the Complaint, which I must accept as true for the purposes of this motion. The twenty named plaintiffs in this action are current and former KLM employees (or temporary workers) who held various positions in the office located in Elmsford, New York. (*See* Compl. P 3.) KLM is a Dutch corporation with offices in Elmsford, New York. (*See id.* PP 5, 10.) Wagemans is a former employee of KLM who worked at KLM's Elmsford, New York office as a "high-level manager". (*See id.* PP 11,

Case 2:08-cv-03760-JS -WDW   Document 11   Filed 11/20/08   Page 21 of 43

Page 2
1999 U.S. Dist. LEXIS 15551, *2; 81 Fair Empl. Prac. Cas. (BNA) 873

13.) Wagemans had the authority to direct and assign work to the plaintiffs, to evaluate their work, and to promote, demote or fire them. (*See id.* P 14.) The alleged conduct giving rise to this action is described more specifically below. In general, Wagemans [*3] harassed the plaintiffs by making "sexual jokes, abusive sexual references, profane and abusive sexually oriented comments, unwanted sexually oriented physical contact and gestures, racial, ethnic and age related jokes." (*Id.* P 12.)

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss, I must view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); Yoder v. Orthomolecular Nutrition Inst., Inc., 751 F.2d 555, 562 (2d Cir. 1985).* I must accept as true the factual allegations stated in the complaint, *Zinermon v. Burch, 494 U.S. 113, 118, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990),* and draw all reasonable inferences in favor of the plaintiff, *see Haines v. Kerner, 404 U.S. 519, 520-21, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993), cert. denied, 510 U.S. 1111, 127 L. Ed. 2d 375, 114 S. Ct. 1054, 114 S. Ct. 1055 (1994).* A motion to dismiss may be granted only if it appears beyond doubt that the plaintiff can prove no set of [*4] facts in support of her claim which would entitle her to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* Even under this liberal standard, however, I find that many of plaintiffs' claims suffer from deficiencies that mandate their dismissal.

### II. Non-Statutory Claims

A. Assault and Battery

Plaintiffs' fourth claim is brought against both defendants and alleges that Wagemans committed the tort of assault and battery on many of the plaintiffs, "including but not limited to" the nine named plaintiffs in paragraph 201 of the Complaint. (*See* Compl. P 201.) Defendants move to dismiss that portion of the claim asserted by the eleven plaintiffs not specifically named in paragraph 201 on grounds that the statute of limitations has run.

In New York, claims of assault and battery have a

one-year statute of limitations that runs from the date of each alleged act. *See Ferran v. Williams, 194 A.D.2d 962, 963, 598 N.Y.S.2d 866* (3d Dep't 1993). The original complaint was filed on March 16, 1998 and, thus, those claims that occurred before March 16, 1997 are time-barred. The following plaintiffs left KLM's employ [*5] before March 16, 1997: Salvatore, Rota, Fruhling, Kane, Dern, Gouskos, Peterkin, Brosnan, McGrath and Tricoli. To the extent that plaintiff Gore alleges any assault and battery claims, that conduct took place between July 1995 and January 1997 and therefore ended some fourteen months before plaintiffs commenced this action. (*See* Compl. P 133.) Plaintiffs concede this point, arguing that the claim is confined to those nine named plaintiffs in paragraph 201, notwithstanding the phrase "including, but not limited to," which preceded those individuals. For these reasons, KLM's motion to dismiss the claim of assault and battery asserted against KLM on behalf of the eleven plaintiffs mentioned above is granted. [1]

> 1    Plaintiffs have withdrawn Rota's claim of discrimination based on pregnancy status and Gore's claim of intentional infliction of emotional distress. (*See* Pl. Mem. at 4 n.1.)

B. Intentional Infliction of Emotional Distress

To maintain a claim for intentional infliction of emotional distress under [*6] New York law, a plaintiff must plead and prove the following four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *See Howell v. New York Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993); Bender v. City of New York, 78 F.3d 787, 789 (2d Cir. 1996).* Courts have relied on the "outrageous conduct" element to set reasonable bounds on this potentially limitless tort, *see Howell, 81 N.Y.2d at 121,* and they have required that the plaintiff allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).*

In the employment context, sexual harassment cases comprise the bulk of intentional infliction of emotional distress actions where plaintiffs prevail. *See O'Reilly v.*

Case 2:08-cv-03760-JS -WDW Document 11 Filed 11/20/08 Page 22 of 43

Page 3
1999 U.S. Dist. LEXIS 15551, *6; 81 Fair Empl. Prac. Cas. (BNA) 873

*Executone of Albany, Inc., 121 A.D.2d 772, 503 N.Y.S.2d 185 [*7]* (3d Dep't 1986); *Koster v. Chase Manhattan Bank, N.A., 609 F. Supp. 1191 (S.D.N.Y. 1985); Collins v. Willcox, Inc., 158 Misc. 2d 54, 600 N.Y.S.2d 884 (N.Y. County 1992).* As I stated in *Nunez v. A-T Financial Info., Inc., 957 F. Supp. 438, 442 (S.D.N.Y. 1997),* those New York Courts that have allowed claims of intentional infliction of emotional distress to proceed require that there be an "unrelenting campaign of day in, day out harassment or that the harassment was accompanied by physical threats." *Id. at 442.*

The following plaintiffs allege claims of intentional infliction of emotional distress: Manfredi, Conca, Cocozzo, Yagnik, Greco, Kroner, Maier, Benaissa and Massa. *(See, e.g., Compl. P 225.)* Most of the plaintiffs' claims involve offensive, harassing and discriminatory comments by Wagemans. *(See id. P 53* (stating plaintiff "looks like a whore"), P 55 ("lazy Italians"), P 77 ("you Indian people are always short and dark"), P 84 (referring to plaintiff as a "gangbanger" and women as "cunts"), P 147 ("Arabs cannot be trusted because they're allowed to have too many wives"). It is well settled that insults [*8] do not meet the rigorous standard of intentional infliction of emotional distress. *See Leibowitz v. Bank Leumi Trust Co. of N.Y., 152 A.D.2d 169, 171, 548 N.Y.S.2d 513* (2d Dep't 1989). Here, many of the plaintiffs allege that the harassing and discriminatory gibes were accompanied with minor physical abuse like the slapping of the back of the head, *(see* Compl. PP 72, 78, 146), the placing of an arm around a female plaintiff, *(id. P 64),* and the occasional grabbing of a female plaintiff's hip, *(id. P 57).* As offensive as these alleged acts are, plaintiffs have not alleged that they were done with an intent to sexually harass or performed on a "day in, day out basis." *See Jaffe v. National League for Nursing, 222 A.D.2d 233, 233, 635 N.Y.S.2d 9* (1st Dep't 1995) (stating hard slap on plaintiff's backside sufficiently alleged tort of assault and battery but declining to find intentional infliction of emotional distress); *Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998)* (finding allegation that plaintiff was shoved into file cabinet did not meet requirements for claim of intentional infliction of [*9] emotional distress).

However, plaintiffs Kroner and Benaissa do state a claim for intentional infliction of emotional distress. While these plaintiffs allege conduct that is not as depraved as that which this Court has found sufficient to state a claim in the past, *see Persaud v. S. Axelrod Co.,*

*1996 U.S. Dist. LEXIS 160,* No. 95 Civ. 7849, 1996 WL 11197, at *12 (S.D.N.Y. Jan. 10, 1996) (finding that plaintiff's allegations that she was subjected to continuous sexual harassment, including unwanted touching and threats by the knife-wielding defendant, were sufficient to state a cause of action for intentional infliction of emotional distress); *Olszewski v. Bloomberg L.P., 1997 U.S. Dist. LEXIS 9654,* No. 96 Civ. 3393, 1997 WL 375690, at *7 (S.D.N.Y. Jul. 7, 1997) (permitting emotional distress claim because plaintiff alleged that she was raped and pressured not to reveal that fact after defendant became her supervisor); *but cf. Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 491 (S.D.N.Y. 1999)* (finding the allegation of sexual battery *(i.e.,* touching plaintiff's breast) in sexual harassment context sufficient to survive summary judgment motion to dismiss intentional emotional distress [*10] claim), the touching was sufficiently pervasive. With respect to plaintiff Kroner, the Complaint alleges that Wagemans once dropped a pencil between her breasts, pushed her to the floor on two separate occasions, and "frequently" massaged her neck between January 1997 and October 1997. *(See* Compl. PP 108-11.) Similarly, plaintiff Benaissa alleges that Wagemans rubbed his crotch against Benaissa's arm in a sexual fashion on "numerous occasions" while calling him "cute." *(See id. PP 144-45.)* Thus, Kroner and Benaissa state claims for intentional infliction of emotional distress.

I do not condone the alleged conduct towards any of these plaintiffs, which -- as alleged -- is boorish, vulgar, misogynistic and reprehensible. However, with respect to the plaintiffs other than Benaissa and Kroner, I hold that Wagemans' conduct does not rise to the level of outrageousness required by the case law. Accordingly, the claims of intentional infliction of emotional distress are dismissed except for the claims of plaintiffs Benaissa and Kroner.

C. Vicarious Liability

Plaintiffs seek to hold KLM liable for the torts of assault and battery and the intentional infliction of emotional distress [*11] committed by Wagemans. "Under New York law, the doctrine of respondeat superior renders an employer vicariously liable for a tort committed by an employee acting within the scope of his employment." *Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)* (citing *Riviello v. Waldron, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979)* and

Case 2:08-cv-03760-JS -WDW Document 11 Filed 11/20/08 Page 23 of 43

Page 4

1999 U.S. Dist. LEXIS 15551, *11; 81 Fair Empl. Prac. Cas. (BNA) 873

*Heindel v. Bowery Sav. Bank, 138 A.D.2d 787, 525 N.Y.S.2d 428* (3d Dep't 1988)). "Intentional torts as well as negligent acts may fall within the scope of employment. In either situation, an employer need not have foreseen the precise act or the exact manner of injury as long as the general type of the conduct may have been reasonably expected." *See Patterson v. Khan, 240 A.D.2d 644, 644, 659 N.Y.S.2d 90* (2d Dep't 1997). However, an employer is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business. *See Tomka, 66 F.3d at 1317* (citing *Heindel, 525 N.Y.S.2d at 428*; *Island Associated Coop., Inc. v. Hartmann, 118 A.D.2d 830, 500 N.Y.S.2d 315* (2d Dep't 1986)); [*12] *Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)*.

"New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Ross, 2 F. Supp. 2d at 531* (dismissing claim for vicarious liability for the sexual advances made by plaintiff's supervisors who exposed themselves to plaintiff and forced her to watch a pornographic videotape); *accord Tomka, 66 F.3d at 1318* (employees' sexual assaults upon co-employee and emotional distress stemming from those assaults "were not in furtherance of [employer's] business and were a complete departure from normal duties" of an employee as a matter of law); *Haybeck v. Prodigy Servs. Co., 944 F. Supp. 326 (S.D.N.Y. 1996)* (collecting New York cases); *Cornell v. State of New York, 60 A.D.2d 714, 401 N.Y.S.2d 107* (3d Dep't 1977) (hospital not liable for sexual assault by hospital attendant on an infant under hospital's care), *aff'd, 46 N.Y.2d 1032, 389 N.E.2d 1064, 416 N.Y.S.2d 542 (1979)*. [*13] Wagemans' alleged sexual misconduct falls outside the employment relationship and, thus, I dismiss that portion of the vicarious liability claim against KLM. (*See* Compl. PP 30, 44, 90, 104, 124, 145, 162.)

Plaintiffs point out, however, that not all of Wagemans' acts which allegedly constitute assault and battery were sexually charged. KLM responds that, nonetheless, vicarious liability does not attach to those unwanted touchings. The New York Court of Appeals has held that the following five factors determine whether a tortious act was done in furtherance of employment:

the connection between the time, place

and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could have easily anticipated.

*Riviello, 47 N.Y.2d at 303.* The *Riviello* court's liability test is "whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of his instructions." [*14] *Id.* (quotation omitted). In applying that test, courts must apply a standard of general foreseeability. *Id. at 304.* Normally, determination of the scope of employment depends "largely on the facts and circumstances peculiar to each case" and is "ordinarily one for the jury." *Id. at 302.* However, when a "'court takes as true all the facts alleged by the plaintiff and concludes that the conduct complained of cannot be considered within the scope of employment, then the court must dismiss the complaint for failure to state a claim.'" *See Guveiyian v. Keefe, 1998 U.S. Dist. LEXIS 1552, *5,* No. 97 CV 5210, 1998 WL 273015, at *2 (E.D.N.Y. 1998) (quoting *Haybeck, 944 F. Supp. at 326*).

Here, it is clear as a matter of law that Wagemans did not act within the scope of his employment when he engaged in the alleged assaults. In reaching this conclusion, I am guided by the *Riviello* Court's discussion of vicarious liability and its specific reference to the intentional tort of assault. *See id. at 304* (citing *Sims v. Bergamo, 3 N.Y.2d 531, 534-35, 169 N.Y.S.2d 449, 147 N.E.2d 1 (1957)* (assault of unruly patron by bartender to protect [*15] employer's property and to maintain order on premises) and *De Wald v. Seidenberg, 297 N.Y. 335, 337-338, 79 N.E.2d 430 (1948)* (assault of tenant by building superintendent during attempted enforcement of occupancy rules)). In those cases, it was generally foreseeable that the employee might commit tortious assault given the nature of the employee's duties. Similarly, courts that have found vicarious liability in such situations have done so when the alleged tortious activity falls within the ambit of the employment. *See Petrousky v. United States, 728 F. Supp. 890, 898 (N.D.N.Y. 1990)* (holding employer vicariously liable for employee's libelous statements contained in administrative memoranda describing plaintiff's work performance); *Murray v. Watervliet City Sch. Dist., 130*

Case 2:08-cv-03760-JS -WDW   Document 11   Filed 11/20/08   Page 24 of 43

Page 5
1999 U.S. Dist. LEXIS 15551, *15; 81 Fair Empl. Prac. Cas. (BNA) 873

*A.D.2d 830, 830, 515 N.Y.S.2d 150* (3d Dep't 1987) (stating that it was generally foreseeable that a teacher, in front of other students, would tell plaintiff's daughter that plaintiff had become pregnant during plaintiff's secondary schooling); *Young Bai Choi v. D & D Novelties, Inc., 157 A.D.2d 777, 778, 550 N.Y.S.2d 376* (2d Dep't 1990) (affirming [*16] jury verdict for plaintiff who was injured when struck with snow shovel handled by defendant's employee while shoveling snow in front of defendant's business).

Taking the alleged facts as true, the conduct complained of cannot be considered to fall within the scope of Wagemans' employment as opposed to his pursuit of his own personal interests. It is clear that (1) there is no connection between the time, place and occasion for the assaults and Wagemans' status as a KLM employee; (2) the acts are not those commonly done by an employee like Wagemans; (3) the acts are a flagrant departure from the normal methods of operation and (4) the acts are those an employer hardly could have anticipated. The alleged fact that KLM knew about the acts of Wagemans does not bring these personal pursuits within the scope of employment. *See Haybeck, 944 F. Supp. at 330.* I note that other courts have ruled as a matter of law on this issue where the alleged acts similarly were removed from the scope of employment. *See Guveiyian, 1998 WL 273015, at *2* (granting 12(b)(6) motion dismissing vicarious liability claim where plaintiff was assaulted by legislative assistant during [*17] voter registration drive); *Haybeck, 944 F. Supp. at 330* (granting 12(b)(6) motion on grounds that employee's personal decision not to disclose his HIV positive status to plaintiff before engaging in consensual sexual relationship was not within scope of employment); *Rappaport v. International Playtex Corp., 43 A.D.2d 393, 352 N.Y.S.2d 241* (3d Dep't 1974) (reversing lower court for failing to dismiss and finding, as a matter of law, that injury sustained in a car accident which took place on plaintiff's way to do employment-related work at his girlfriend's house was outside the scope of employment).

Accordingly, KLM's motion to dismiss that portion of the complaint is granted.

D. Negligent Hiring, Training, Retention and Supervision

In New York, recovery for injuries caused by the negligence of an employer is governed by the workers' compensation law. *See Ross, 2 F. Supp. 2d at 532.* If recovery is available under the workers' compensation

law, then that recovery is the plaintiff's exclusive remedy against the employer and other common law tort claims are prohibited. *See Persaud, 1996 WL 11197, at *5.* Therefore, the [*18] workers' compensation law bars those claims asserted against KLM for the negligent hiring, training, supervising or retaining of Wagemans. *See Walker v. Weight Watchers Int'l, 961 F. Supp. 32, 35 (E.D.N.Y. 1997); Ross, 2 F. Supp. 2d at 533.*

However, workers' compensation is not the exclusive remedy for those tortious acts which the employer committed intentionally or which were "perpetrated at the employer's direction or instigation." *Thompson v. Maimonides Med. Ctr., 86 A.D.2d 867, 868, 447 N.Y.S.2d 308* (2d Dep't 1982); *see N.Y. Work. Comp. Law § 11* (McKinney 1997); *Torres v. Pisano, 116 F.3d 625, 640* (2d Cir.), *cert. denied, 522 U.S. 997, 118 S. Ct. 563, 139 L. Ed. 2d 404 (1997).* "To fall within the intentional tort exception, however, the employee must allege that the employer engaged in conduct to bring about the consequences of the act. Mere knowledge or appreciation of the risk is insufficient to invoke the exception." *Rosario v. Copacabana Night Club, Inc., 1998 U.S. Dist. LEXIS 7840, *27-28, No. 97 Civ. 2052, 1998 WL 273110, at *9* (S.D.N.Y. May 28, 1998) (quotations omitted).

Plaintiffs argue that the [*19] allegation that KLM was "negligent and/or reckless" enables plaintiffs to invoke the special exception. However, New York courts have rejected attempts to remove cases from the exclusivity provision of the workers' compensation law by alleging recklessness. *See LeDoux v. City of Rochester, 162 A.D.2d 1049, 557 N.Y.S.2d 821* (4th Dep't 1990) (dismissing complaint which alleged that co-employee acted negligently, carelessly and recklessly but which lacked any allegation that the coemployee acted "deliberately with intent to injure"); *Orzechowski v. Warner-Lambert Co., 92 A.D.2d 110, 112, 460 N.Y.S.2d 64* (2d Dep't 1983) (allegation of reckless conduct or gross negligence insufficient to allege intentional conduct). Taking the facts alleged in the Complaint as true, plaintiff has failed to allege that KLM "engaged in conduct to bring about the consequences of the act." *Rosario, 1998 WL 273110, at *9.*

Accordingly, KLM's motion to dismiss the claim for negligent or reckless hiring, training, supervision and retention is granted.

**III. Title VII and Human Rights Law Claims** [2]

Case 2:08-cv-03760-JS -WDW Document 11 Filed 11/20/08 Page 25 of 43

Page 6
1999 U.S. Dist. LEXIS 15551, *19; 81 Fair Empl. Prac. Cas. (BNA) 873

2 Plaintiffs concede the following: plaintiffs Salvatore, Rota, Kane, Manfredi, Gouskas, Brosnan and Massa have alleged claims of national origin and sex discrimination only, (Pl. Mem. at 14), plaintiff Fruhling has alleged religious and sex discrimination only, (id.), plaintiff Conca has alleged claims of national origin, sex and age discrimination only, (id.), plaintiff Cocozzo has alleged claims of national origin and sexual orientation discrimination only, (id.), plaintiff Yagnik has alleged claims of national origin discrimination and discrimination on the basis of color only, (id.), plaintiff Dern has alleged claims of sex, age and religious discrimination only, (id.), plaintiff Greco has alleged claims of sex discrimination and discrimination on the basis of pregnancy only, (id.), plaintiff Peterkin has alleged claims of sex, national origin and racial discrimination and discrimination on the basis of color only, (id.), plaintiff Kroner has alleged claims of sex, age and religious discrimination only, (id.), plaintiffs Gore and Maier have alleged claims of sex and age discrimination only, (id.), plaintiff Benaissa has alleged claims of national origin, sex and religious discrimination only, (id.), plaintiff McGrath has alleged a claim of sex discrimination only, (id.), and plaintiff Tricoli has alleged a claim of national origin discrimination only, (id.). Thus, to the extent the Complaint alleges other forms of discrimination pertaining to the above-described plaintiffs, those discrimination claims are dismissed.

Furthermore, I agree that plaintiff Brosnan's claim for national origin discrimination should be dismissed. The complaint does not contain any allegations as to Brosnan's national origin or any conduct of defendants relating to Brosnan's national origin. (Compl. PP 120-31.)

[*20] A. Individual and Official Liability

Plaintiffs bring Title VII claims against Wagemans in both his individual and official capacities. In *Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir. 1995)*, the Court of Appeals held that defendants with supervisory control over a plaintiff may not be held individually, or personally, liable under Title VII. Accordingly, that portion of the Complaint which attempts to hold Wagemans individually liable is dismissed.

Plaintiffs correctly note that *Tomka* did not address the potential liability of individuals in their official capacity. *See Cook v. Arrowsmith Shelburne Inc., 69 F.3d 1235, 1241 n.2 (2d Cir. 1995)* (stating that the "issue of whether . . . an individual may be made a party defendant solely in the person's corporate capacity as an agent of the employer . . . was neither argued to, nor addressed to the *Tomka* court"). However, the weight of authority in this circuit has leaned decidedly against permitting individual defendants to be sued in their official capacities. I recognized the strength of that reasoning in an earlier decision, *Crockett v. Pataki, 1998 U.S. Dist. LEXIS 14393*, No. 97 Civ. 3539, 1998 WL 614134, [*21] at *4 (S.D.N.Y. Sept. 14, 1998). [3] *See also McBride v. Routh, 51 F. Supp. 2d 153, 156, 1999 WL 364255*, at *3 (D. Conn. 1999) (collecting cases). Courts have declined to find a private right of action against a supervisory employee in his official capacity because of the absence of Congressional intent to impose such liability on an employer. *See Gray v. Shearson Lehman Bros., Inc., 947 F. Supp. 132, 136 (S.D.N.Y. 1996); Bonner v. Guccione, 916 F. Supp. 271, 279 (S.D.N.Y. 1996); Yaba v. Cadwalader, Wickersham & Taft, 896 F. Supp. 352, 353-54 & n.1 (S.D.N.Y. 1995)*. Accordingly, the Title VII cause of action against Wagemans in his official capacity is dismissed.

> 3 In light of my reconsideration of this issue in *Crockett*, plaintiff's reliance on my earlier decision of *Geiger v. E.I. DuPont Nemours & Co., Inc., 1997 U.S. Dist. LEXIS 2049*, No. 96 Civ. 2757, 1997 WL 83291, at *19-*20 (S.D.N.Y. Feb. 27, 1997), for the proposition that individuals may be sued in their official capacity for violations of Title VII is misplaced.

[*22] Wagemans also moves to dismiss the Human Rights Law claims against him. Two theories of liability have been recognized by the courts applying the Human Rights Law. Claims for discrimination brought under the Human Rights Law may be directed at either (1) employers or (2) persons who aid and abet an employer's violation of the statute. *N.Y. Exec. Law §§ 296(1)(a) & 292(6)*. The Human Rights Law does not define "employer," but the New York Court of Appeals has held that a corporate employee is not individually subject to a suit for discrimination if he is not shown to have any ownership interest or any power to do more than carry

Case 2:08-cv-03760-JS -WDW   Document 11   Filed 11/20/08   Page 26 of 43

Page 7
1999 U.S. Dist. LEXIS 15551, *22; 81 Fair Empl. Prac. Cas. (BNA) 873

out personnel decisions made by others. *See Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11 (1984).* Although it does not appear from the face of the Complaint that Wagemans was an "employer," (*see* Compl. P 228) (stating Wagemans was an "employee within the supervision and control of the defendant, KLM"), plaintiff has adequately alleged that Wagemans was an "aider and abettor" under the Human Rights Law.

Several courts in the Second Circuit have held that managers or supervisors may be held individually [*23] liable if they aid and abet discrimination as proscribed by *§ 296(6)* of the Human Rights Law. *Tomka, 66 F.3d at 1313; McNulty v. New York City Dep't of Fin., 941 F. Supp. 452, 459 (S.D.N.Y. 1996); Jungels v. State Univ. Col. of New York, 922 F. Supp. 779, 786 (W.D.N.Y. 1996), aff'd, Jungels v. Jones, 112 F.3d 504 (2d Cir. 1997).* The Appellate Division, First Department, has adopted the *Tomka* holding, *Steadman v. Sinclair, 223 A.D.2d 392, 636 N.Y.S.2d 325, 326* (1st Dep't 1996), but the Second Department and at least one lower New York court have rejected it. *See Trovato v. Air Express Int'l, 238 A.D.2d 333, 334, 655 N.Y.S.2d 656* (2d Dep't 1997); *Foley v. Mobil Chemical Co., 170 Misc. 2d 1, 647 N.Y.S.2d 374, 380-82 (Monroe County 1996).* The New York Court of Appeals has not spoken on this matter.

Recently, in *Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414 (S.D.N.Y. 1998),* the Court declined to recognize aiding and abetting claims against individuals under the Human Rights Law because of the split among the New York courts and the "potential [*24] for confusion on liability and remedies". *Id. at 440.* Nevertheless, I follow the majority of federal cases which have held that *Tomka,* as the law in this circuit, is binding. *See Bascomb v. Smith Barney Inc., 1999 U.S. Dist. LEXIS 353, No. 96 Civ. 8747, 1999 WL 20853, at *5 (S.D.N.Y. Jan. 15, 1999); Bigelow v. New York State Dep't of Corrections, 1997 U.S. Dist. LEXIS 18133, *8 n.1, No. 97- CV-460, 1997 WL 733867, at *3 n.1 (N.D.N.Y. Nov. 7, 1997); Johnson v. A.P. Prods., Ltd., 934 F. Supp. 625, 630 (S.D.N.Y. 1996); Tagare v. NYNEX Network Sys. Co., 921 F. Supp. 1146, 1152 (S.D.N.Y. 1996); Luongo v. Nationwide Mut. Ins. Co., 1996 U.S. Dist. LEXIS 11186, No. 95 Civ. 3190, 1996 WL 445365, at *3 (S.D.N.Y. Aug. 7, 1996).*

*Tomka* holds that a defendant must "actually participate in the conduct giving rise to a discrimination claim." *66 F.3d at 1317.* The Complaint is replete with examples where Wagemans allegedly "actually participated" in the discrimination. In fact, Wagemans is the sole KLM employee alleged to have engaged in the discriminatory conduct. Accordingly, Wagemans' motion to dismiss the HRL claims is denied.

B. Hostile Work Environment Claims

Title [*25] VII [4] affords employees the right to work in an environment "free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S. Ct. 2399, 2404-05, 91 L. Ed. 2d 49 (1986).* To prevail on a hostile work environment claim, a plaintiff must prove: (1) that she is a member of a protected group; (2) that she was the subject of unwelcome advances; (3) that the harassment was based upon her membership in the protected class; and (4) that the harassment affected a term, condition, or privilege of employment. *See Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1042 (2d Cir. 1993)* (citing *Meritor, 477 U.S. at 63-69, 106 S. Ct. at 2403-07).* A hostile environment under Title VII is a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive so as to alter conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993); Castro v. Local 1199, 964 F. Supp. 719, 728 (S.D.N.Y. 1997)* ("To sustain a [*26] Title VII claim under a hostile work environment theory, plaintiff must present evidence of racially vicious epithets, physically threatening or humiliating actions, or a pattern of such reprehensible behavior over an extended period of time."). A court must be particularly concerned with "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id. at 23, 114 S. Ct. at 371.* While a plaintiff's subjective experience of a hostile environment is necessary to sustain a claim, it is not enough. As the Supreme Court has reminded, "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." *Id. at 21, 114 S. Ct. at 367; Torres, 116 F.3d at 631.*

_____

4  The standards governing harassment under the

*equal protection clause* and the Human Rights Law are virtually identical to the standards applied to claims brought under Title VII; accordingly, this portion of the opinion addresses all of plaintiffs' harassment claims simultaneously. *See Torres v. Pisano, 116 F.3d 625, 629 n.1* (2d Cir.) ("We have repeatedly noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII"), *cert. denied, 522 U.S. 997, 118 S. Ct. 563, 139 L. Ed. 2d 404 (1997); Tomka, 66 F.3d at 1304 n.4* (noting that New York courts apply the same standards of proof to claims brought under *section 296 of the New York Executive Law* as to those brought under Title VII); *Wise v. New York City Police Dep't, 928 F. Supp. 355, 367 (S.D.N.Y. 1996)* (employing Title VII standards to analyze sexual harassment claim advanced under *equal protection clause*).

[*27] To determine whether a work environment is so hostile as to violate Title VII, I must evaluate all relevant circumstances, *see Harris, 510 U.S. at 21, 114 S. Ct. at 367*, and consider "the social context in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S. Ct. 998, 1003, 140 L. Ed. 2d 201 (1998)*. Indeed, as the Supreme Court stated:

> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish . . . conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Id.*

Defendants move to dismiss the hostile environment claims of the following seven plaintiffs: Rota, Kane, Conca, Cocozzo, Yagnik, Maier and Tricoli. The allegations supporting these plaintiffs claims are

discussed below. I hold that these seven hostile environment claims [*28] should be dismissed because none of the plaintiffs has alleged that defendants' conduct was severe or pervasive enough to warrant a finding of hostile environment harassment. In particular, the events alleged, while troubling and offensive, are alleged to have occurred episodically and without the degree of frequency necessary to uphold hostile environment claims. *See, e.g., Schwapp v. Town of Avon, 118 F.3d 106, 109 (2d Cir. 1997)* ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity,' meaning that 'instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments'") (citing cases).

Plaintiffs' statement in their brief that the "discriminatory acts alleged were repeated, recurrent, and in fact, pervaded the daily work life of each plaintiff" is unsupported by factual allegations in the complaint. (Pl. Mem. at 15.) I understand that in hostile environment cases, "even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability. [*29] " *Tomka, 66 F.3d at 1305* (footnote and citations omitted). However, none of the alleged offensive touchings appear to rise to the level of sexual assault to compel me to engage in that analysis.

### 1. Rota

Rota alleges that Wagemans: (1) "told Rota that women with children (such as herself) should not be working, but should be home raising children"; (2) made unwanted embarrassing sexually charged comments to her; (3) called Rota a "gangbanger"; (4) questioned whether she was breastfeeding her newborn child and suggested that she was breastfeeding her child more for her own gratification than that of the child; (5) "screamed at Ms. Rota at the top of his lungs, and placed Ms. Rota in fear that he would become physical and hit her"; and (6) accused her of having a "bitchy" attitude. (Compl. P 37.)

Rota has not stated a claim for hostile work environment sexual harassment. She has not alleged that Wagemans' comments or conduct occurred with any significant frequency. *Tomka, 66 F.3d at 1305 n.5* ("isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be

Case 2:08-cv-03760-JS -WDW Document 11 Filed 11/20/08 Page 28 of 43

Page 9

1999 U.S. Dist. LEXIS 15551, *29; 81 Fair Empl. Prac. Cas. (BNA) 873

actionable, the incidents of harassment must occur [*30] in concert or with a regularity that can reasonably be termed pervasive"). Furthermore, disparaging remarks about the capabilities of working mothers, such as those alleged here, are not sufficiently severe to establish a hostile environment claim. *Trezza v. The Hartford, Inc., 1998 U.S. Dist. LEXIS 20206*, *5, No. 98 Civ. 2205, 1998 WL 912101, at *1, *4 (S.D.N.Y. Dec. 30, 1998) (dismissing hostile work environment claims where defendants commented on the "'incompetence and laziness of women who are also working mothers'"). Conclusory allegations of "unwanted embarrassing sexually charged comments" are also inadequate to state a claim. *Gibson v. Jacob K. Javits Convention Ctr. of N.Y., 1998 U.S. Dist. LEXIS 3717*, No. 95 Civ. 9728, 1998 WL 132796, at *7-*8 (S.D.N.Y. Mar. 23, 1998) (dismissing allegations containing conclusory descriptions of hostile work environment). Moreover, Rota has not alleged that Wagemans' screaming was related to her gender. *See Cosgrove, 9 F.3d at 1042* (plaintiff must prove that the harassment was based on her sex). Thus, Rota's hostile work environment claim must fail.

#### 2. Kane

Similarly, Kane's allegations do not amount to actionable sexual harassment. Wagemans is alleged [*31] to have called Kane "sweetie pie," "Maura Baby," "cutie," and "stupid." (Compl. P 47.) In addition, Kane alleges that Wagemans told her to "shut up," that "Americans are lazy" and stood so close to Kane, that he brushed up against her on "some occasions." (*Id. PP 48-49*.) Wagemans' alleged comments, albeit offensive, are not severe and do not state a claim for hostile environment harassment. The Complaint does not suggest that the "brushing up" against Kane on "some occasions" was so "severe" or "pervasive" as to have affected the terms or conditions of Kane's employment. *See Gibson*, 1998 WL 132796, at *9 (dismissing sexual harassment claim where employer stared at plaintiff, even though staring was deemed "of a sexual nature").

#### 3. Conca

Plaintiff Conca alleges that Wagemans called her "wife" and "hon," "My Rosemarie," "You stupid woman" and that he would put his arm around Conca's shoulder or through her arm and say, "Come, Wife," "Come, Dear," or "Let's go, Hon." (Compl. PP 63-64.) In addition, Wagemans is alleged to have asked if Conca's husband

was a "mafioso," made comments about the "Italian temper" and made derogatory comments about Conca's national origin [*32] as an American. (*Id. P 65*.) Furthermore, Wagemans allegedly said, in referring to Ms. Conca, "she looks nice for her age," and "she is good looking for an older woman." (*Id. P 66*.) I find that the alleged comments related to Conca's gender and national origin, and the alleged unwanted contact, do not amount to behavior creating a hostile work environment. Such casual comments and behavior do not suffice. *See Watts v. New York Police Dep't, 724 F. Supp. 99, 104 (S.D.N.Y. 1989)*.

With respect to Conca's age-related claims, Conca has not averred that she was aware of the allegedly offensive statements and, thus, does not state a claim for hostile environment harassment. *Gibson*, 1998 WL 132796, at *8 (dismissing hostile environment claim where plaintiff did not aver she was aware of the offensive conduct).

#### 4. Cocozzo

As discussed below, discrimination on the basis of sexual orientation is not prohibited by Title VII. Thus, to the extent Cocozzo claims Wagemans' comments created a hostile environment founded on sexual orientation, these claims are dismissed. Cocozzo also alleges that Wagemans called him a "crazy Italian" and a "mafioso". (*Id.* [*33] *P 70*.) Furthermore, Cocozzo alleges that on "numerous" occasions, Wagemans hit him on the back of the head. (*Id. P 72*.) Cocozzo also states that on one occasion, "Wagemans hit Mr. Cocozzo numerous time [sic] in the face with sheets of paper," (*Id. P 73*) and that on one occasion, "Mr. Wagemans kicked Mr. Cocozzo in the leg twice," (*Id. P 74*.) I conclude from this set of facts that, at most, Cocozzo has suggested that Mr. Wagemans "uses offensive language and has evinced a dislike for plaintiff." *Francis v. Chemical Banking Corp., 62 F. Supp. 2d 948, 1999 U.S. Dist. LEXIS 12502, 1999 WL 617628*, at *9 (E.D.N.Y. 1999) (dismissing claim for racially hostile work environment where plaintiff alleged four specific incidents involving racial comments and that defendant lunged at him, followed him into the bathroom and brushed his hand against plaintiff's buttocks). Cocozzo has not alleged a barrage of disparaging remarks based on his national origin, nor has he alleged a connection between the unwanted touchings and behavior indicative of national origin animus. *See Francis*, 1999 WL 617628, at *9 (dismissing claims

Case 2:08-cv-03760-JS -WDW Document 11 Filed 11/20/08 Page 29 of 43

Page 10

1999 U.S. Dist. LEXIS 15551, *33; 81 Fair Empl. Prac. Cas. (BNA) 873

where physical contact objectively carried no racial [*34] overtones).

### 5. Yagnik

Plaintiff Yagnik alleges that Mr. Wagemans made derogatory comments about Yagnik's national origin and his skin color such as "you Indian people are always short and dark." (Compl. P 77.) Yagnik also alleges that Wagemans hit Yagnik in the back of the head with his hand on numerous occasions. (*Id. P 78.*) Like Cocozzo, Yagnik has not alleged that he was repeatedly subjected to the offensive remarks or Wagemans' comments unreasonably interfered with his work performance. Wagemans' comments rise to no more than a "mere offensive utterance" which is not actionable under Title VII. *Harris, 510 U.S. at 21, 114 S. Ct. at 370* ("Mere utterance of an . . . epithet which engenders offensive feelings in the employee does not sufficiently affect the conditions of employment to implicate Title VII." (quoting *Meritor, 477 U.S. at 67, 106 S. Ct. at 2405* (citation and internal quotation marks omitted))).

### 6. Maier

Maier alleges that Wagemans subjected her to derogatory comments about her age such as "you are a lovely old lady" and frequent greetings such as "how are you, old lady?" (Compl. P 140.) She also alleges that Mr. Wagemans stated, [*35] "What are you, a lesbian?" (*Id.*) Maier also alleges that on one occasion, Wagemans "sneaked up behind Ms. Maier while she worked at her desk and stood so close to Ms. Maier that she jumped up and screamed in fear that he was about to pounce on her, grab her, and physically touch or even injure her." ( *Id. P 141.*) Again, these comments are not severe or pervasive so as to create a hostile work environment. Furthermore, the isolated incident of Wagemans' "sneaking up" on Ms. Maier, cannot readily be attributed to Wagemans' attitudes about Ms. Maier's age or her gender. *Francis,* 1999 WL 617628, at *9 (dismissing hostile environment claims where vague descriptions of offensive language and conduct could not be readily attributed to racial animus).

### 7. Tricoli

Tricoli alleges that on numerous occasions, Wagemans made derogatory remarks about Tricoli's national origin and heritage, such as "Guinea," "lazy italian," "Mafioso," and "Gangster." (Compl. P 171.)

These allegations, without more, do not establish a hostile work environment. Tricoli has not alleged that these comments alleged that these comments unreasonably interfered with his work performance. [*36] *Harris, 510 U.S. at 23.*

### C. Sexual Orientation Claims

Defendants seek to dismiss those claims alleging harassment or discrimination based on sexual orientation because neither Title VII nor the Human Rights Law prohibits such discrimination. [5] I agree.

> 5 Only plaintiff Cocozzo asserts a claim on the basis of sexual orientation.

As Judge Wexler's well-reasoned opinion, *Simonton v. Runyon, 50 F. Supp. 2d 159, 162 (E.D.N.Y. 1999)*, makes clear, harassment based on a plaintiff's sexual orientation, as opposed to a plaintiff's sex, is not covered by Title VII. In *Simonton*, the district court reviewed the recent Supreme Court case *Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)*, and the Court of Appeals' decision in *DeCintio v. Westchester County Medical Ctr., 807 F.2d 304 (2d Cir. 1986), cert. denied, 484 U.S. 825, 108 S. Ct. 89, 98 L. Ed. 2d 50 (1987)*. In *Oncale,* the Supreme [*37] Court emphasized that the discrimination alleged must be "based on sex." *Oncale, 118 S. Ct. at 1002* (stating that the "critical issue . . . [is] whether the members of one sex are exposed to conditions of employment to which members of the other sex are not exposed") (quotation omitted). The Court left undisturbed that line of cases finding that discrimination based on sexual orientation is not discrimination based on sex and thus does not state a claim under Title VII. *See, e.g., Dillon v. Frank, 952 F.2d 403, 1992 WL 5436 (6th Cir. 1992)* (holding no Title VII remedy for hostile work environment caused by taunts about plaintiff's homosexuality); *Williamson v. A.G. Edwards and Sons, Inc., 876 F.2d 69, 70 (8th Cir. 1989), cert. denied, 493 U.S. 1089, 110 S. Ct. 1158, 107 L. Ed. 2d 1061 (1990)* (Title VII does not prohibit discrimination based on homosexuality).

The Court of Appeals has not yet addressed this precise question. In *DeCintio*, however, the Court considered whether Title VII applies to a plaintiff who alleged discrimination based on the preferential treatment that a hired female had received because [*38] of her "sexual liaison" with the employer. There, the Court of Appeals took pains to establish that the discrimination

Case 2:08-cv-03760-JS -WDW    Document 11    Filed 11/20/08    Page 30 of 43

Page 11
1999 U.S. Dist. LEXIS 15551, *38; 81 Fair Empl. Prac. Cas. (BNA) 873

suffered was not the result of the plaintiff's sex, but because of the romantic relationship. In so doing, the Court of Appeals cited with approval those cases refusing to extend Title VII protection to claims of discrimination based upon sexual orientation. *See DeCintio, 807 F.2d at 307.*

"In light of the clear requirement in *Oncale* that a Title VII claim must allege discrimination 'based upon sex' and the Second Circuit's holding in *DeCintio, . . .* plaintiff's hostile environment claim, stemming from treatment he received because he is a homosexual, does not state a claim for discrimination on the basis of sex in violation of Title VII." *Simonton, 50 F. Supp. 2d at 162.* Accordingly, defendants' motion to dismiss this portion of the Complaint is granted. [6]

> 6 As noted in footnote 4, *supra*, Title VII and Human Rights Law claims are evaluated identically for purposes of discrimination, and thus this claim fails under the Human Rights Law.

[*39] D. Retaliation Claims [7]

> 7 Plaintiffs request to replead their retaliation claims is denied. Plaintiffs have now had four opportunities to plead their claims adequately. I also deny plaintiffs' request to replead after discovery. *See Jones v. Capital Cities/ABC Inc., 168 F.R.D. 477, 480 (S.D.N.Y. 1996)* ("'the purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists'," *Stoner v. Walsh, 772 F. Supp. 790, 800 (S.D.N.Y. 1991)).*

KLM and Wagemans seek to dismiss sixteen of plaintiffs' retaliation claims for failure to plead a *prima facie* case. [8] Citing the Court of Appeals' decisions in *Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)* and *Tomka, 66 F.3d at 1308,* defendants argue that plaintiffs have not sufficiently alleged plaintiffs' participation in a protected activity known to the defendants, an employment action adverse to plaintiffs or a causal connection [*40] between the protected activity and the adverse employment action. *See also Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988).*

> 8 The sixteen are: Salvatore, Rota, Fruhling, Kane, Manfredi, Conca, Cocozzo, Yagnik, Dern, Gouskos, Peterkin, Brosnan, Gore, Maier,

Benaissa and Massa. KLM does not seek to dismiss retaliation claims of Greco, Kroner, McGrath or Tricoli.

I agree that plaintiffs' retaliation claims cannot survive this motion. "An employee engages in a protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII, or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Blake-McIntosh v. Cadbury Beverages, Inc., 1999 U.S. Dist. LEXIS 16550, No. 3:96- CV-2554, 1999 WL 643661, at *13 (D. Conn. Aug. 10, 1999).* The complaint is devoid of any factual allegations stating that plaintiffs Fruhling, Cocozzo, Maier and Massa engaged in any [*41] protected activity. Therefore, their retaliation claims are dismissed.

The remaining twelve plaintiffs allege that each "objected to, opposed, and complained about Wagemans' conduct, which resulted in further discriminatory behavior against" each of these twelve plaintiffs. (Compl. PP 34, 40, 50, 60, 67, 80, 86, 92, 105, 130, 137, 149.) None of these plaintiffs has alleged specifically that they complained to KLM about Mr. Wagemans' conduct. Furthermore, none of these plaintiffs has alleged the particular conduct about which they complained, or that their complaints described Wagemans' conduct as discriminatory. *See Boyce v. New York City Mission Soc'y, 963 F. Supp. 290, 294 (S.D.N.Y. 1997)* (dismissing retaliation claim where plaintiff did not allege that conduct of which she complained was discriminatory); *Wilson v. The Reuben H. Donnelley Corp., 1998 U.S. Dist. LEXIS 17220, *10, No. 98 Civ. 1750, 1998 WL 770555, at *4 (S.D.N.Y. Nov. 2, 1998)* ("'In order to survive a motion to dismiss, a complaint asserting a civil rights violation must set forth specific factual allegations establishing a prima facie case'") (quoting *Murphy v. Cadillac Rubber & Plastics, Inc., 946 F. Supp. 1108, 1116 (W.D.N.Y. 1996)).* [*42] Therefore, I find that plaintiffs have not sufficiently alleged that they participated in a protected activity with knowledge of the defendants.

Assuming that plaintiffs have adequately pleaded engagement in protected activity, they have failed to plead any nexus between any adverse employment action that can be gleaned from their complaint, and the protected activity. Furthermore, the failure to detail any adverse employment actions with any specificity,

including temporal and contextual descriptions, *DeCintio, 821 F.2d 111, 114 (1987)* ("proof of causal connection can be established by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant") (citations omitted), make it impossible to infer a connection between the adverse action and plaintiffs' alleged complaints about Wagemans' conduct.

An employment action can be adverse even if it does not rise to the level of job termination or reduced wages and benefits. *See Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997)* [*43] (comparing Age Discrimination in Employment Act to Title VII). "Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Id. at 466.* I cannot and need not engage in that analysis here. First, plaintiffs allege conclusorily that their complaints about Mr. Wagemans' conduct resulted in further discriminatory behavior against them. (Compl. PP 34, 40, 50, 60, 67, 80, 86, 92, 105, 130, 137, 149.) Without specific facts regarding the kind of behavior, and who participated in such behavior, I cannot determine whether the plaintiffs suffered an adverse employment action. *Cf. Spurlock v. NYNEX, 949 F. Supp. 1022, 1032 (W.D.N.Y. 1996)* (sustaining retaliation claims where plaintiff specified alleged retaliatory conduct). Second, even where plaintiffs plead arguably adverse employment actions, according to the twelve plaintiffs, the actions are alleged to have occurred "as a result of the discriminatory and harassing conduct of the defendants," (Compl. PP 35, 41, 51, 61, 68, 81, 87, 93, 106, 131, 138, 150.) Thus, the plaintiffs have not plead that the adverse [*44] employment action resulted from their participation in a protected activity. Without a link between the protected activity and the adverse employment action, plaintiffs' retaliation claims must fail. [9]

> 9 For the reasons set forth in footnote 4, *supra*, these plaintiffs' claims for retaliation under the HRL are dismissed. *Stordeur v. Computer Assocs. Int'l, Inc., 995 F. Supp. 94, 103 (E.D.N.Y. 1998)* ("A claim under New York's Human Rights Law and under Title VII are essentially identical"); *Boyce, 963 F. Supp. at 295 n.3* ("Stating a retaliation claim under New York Law

is substantially similar to Title VII.").

E. Failure to Promote

I agree that plaintiffs have not sufficiently alleged claims of a discriminatory failure to promote. In order to sustain a claim based on failure to promote, a plaintiff must plead that he or she applied for a specific position and was rejected. *Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998)* (failure to promote [*45] claim dismissed where plaintiff alleged only that she had repeatedly requested a promotion). No plaintiff has alleged that he or she applied for a specific promotion. Instead, each relies on the general allegation that he or she was "denied . . . promotions . . . as a result of the discriminatory and harassing conduct of the defendants." (Compl. PP 35, 41, 51, 61, 68, 75, 81, 87, 93, 99, 106, 131, 138, 142, 150, 159, 169, 175.) [10] Plaintiffs suggest new facts in their opposition to defendant KLM's motion to dismiss the failure to promote claims. (Pl. Mem. at 18.) Even if I were to accept these allegations, I conclude still that plaintiffs have not alleged any specific positions to which any plaintiff applied, and, therefore, have not alleged a *prima facie* case.

> 10 Plaintiff Kroner alleges, "After commencement of this action, KLM has retaliated against Ms. Kroner by denying her a transfer and/or promotion for which she applied." I construe this claim as one for retaliation, and not for failure to promote under Title VII, because by its terms, the claim accrued after the commencement of this litigation.

[*46] F. Denial of Overtime Pay and Benefits

To establish a *prima facie* case of discrimination in the provision of overtime pay, a plaintiff must allege that (1) he or she is a protected class member; (2) he or she was qualified for to receive overtime pay; (3) an employer denied the plaintiff overtime pay for overtime work performed; and (4) the denial of overtime occurred under circumstances giving rise to an inference of discrimination. *See Austin v. Ford Models, Inc., 149 F.3d 148, 153 (2d Cir. 1998)* (dismissing claims for sex and age discrimination); *see generally McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973)* (setting forth requirements for *prima facie* case of race discrimination). Plaintiffs have not met their burden here. Plaintiffs have failed to allege any facts showing that plaintiffs were qualified, by virtue

Case 2:08-cv-03760-JS -WDW  Document 11  Filed 11/20/08  Page 32 of 43

Page 13

1999 U.S. Dist. LEXIS 15551, *46; 81 Fair Empl. Prac. Cas. (BNA) 873

of their positions or otherwise, to receive overtime. Furthermore, plaintiffs have not alleged that they worked overtime and are, therefore, entitled to receive overtime pay. Last, plaintiffs have not alleged that their protected class status was a factor in the denial of overtime [*47] pay. *See Austin, 149 F.3d at 154* (dismissing age discrimination claim where plaintiff failed to allege that overtime was paid only to employees younger than plaintiff); *Lamb v. Henderson, 1999 U.S. Dist. LEXIS 12144,* No. 98 Civ. 2756, 1999 WL 596271, at *3 (S.D.N.Y. Aug. 9, 1999) (dismissing age discrimination claim where plaintiff failed to allege disparate effect of alleged adverse employment decision). Therefore, plaintiffs have failed to set forth a *prima facie* case for discrimination in the failure to pay overtime.

For the same reasons fatal to their denial of overtime pay claims, plaintiffs' denial of benefits claims must fail. Plaintiffs have not alleged specific benefits denied, nor the basis for their entitlement to such benefits. In addition, they have failed to show that these benefits were given to persons outside plaintiffs' protected classes. [11]

> 11  For these reasons, plaintiffs' failure to promote, denial of overtime and benefits claims under the HRL also fail. *See Van Zant, 80 F.3d at 714* (citing cases).

### [*48]  IV. City Law Claims. [12]

> 12  I agree with plaintiffs that compliance with the service requirements provided in section 8-502(c) of the New York Administrative Code is not a condition precedent to a valid suit. *See Cully v. Milliman & Robertson, Inc., 20 F. Supp. 2d 636, 643-44 (S.D.N.Y. 1998)* ("The clear weight of authority in New York courts is that the § 8-502(c) requirement of notice to the City is not a condition precedent to a valid suit."); *Duffy v. Drake Beam Morin, 1998 U.S. Dist. LEXIS 7215,* *34 n.8, No. 96 Civ. 5606, 1998 WL 252063, at *11 n.8 (S.D.N.Y. May 19, 1998)* ("Whatever doubt may have existed before, . . . , it is now settled that filing a complaint with the [New York City Commission on Human Rights and the Corporation Counsel] is not a prerequisite to bringing suit under the [City HRL]").

Plaintiffs Salvatore, Gouskos, Brosnan and Tricoli

allege violations of the City HRL. Salvatore and Gouskos allege that Wagemans made "unwelcome, humiliating, sexually suggestive comments to Mr. [*49] Salvatore and Mr. Gouskos" while Salvatore and Gouskos were at Wagemans' home in New York City at Wagemans' demand. (Compl. PP 32, 91.) Brosnan alleges that at a company outing in New York City, Wagemans put his arm around Brosnan "in another instance of an unwanted sexual advance and unwanted sexually charged physical contact." (Compl. P 126.) Salvatore and Tricoli allege that during a company outing in New York City, Mr. Wagemans made derogatory remarks to him about his national origin. (Compl. PP 33, 172.) Defendants assert that plaintiffs' claims under the City HRL should be dismissed because these alleged incidents, if true, had an impact on plaintiffs' employment in Westchester County, not New York City. Thus, defendants assert, the City HRL cannot apply to defendants claims because the Administrative Code of the City of New York applies only to conduct within the boundaries of New York City.

I agree. The City HRL applies only to acts occurring within the boundaries of New York City. *Casper v. Lew Lieberbaum & Co., Inc., 1998 U.S. Dist. LEXIS 4063,* *14, No. 97 Civ. 3016, 1998 WL 150993, at *4 (S.D.N.Y. Mar. 31, 1998)* ("Both New York State law and the Administrative Code limit the applicability [*50] of the Administrative Code to acts that occur within the boundaries of New York City"). In order to state a claim under the City HRL, a plaintiff must allege that he was discriminated against by the defendant within New York City. *See Duffy, 1998 WL 252063, at *11.* The fact that certain acts leading to discrimination may occur in New York City will not necessarily give rise to a claim under the City HRL. *See Lightfoot v. Union Carbide Corp., 1994 U.S. Dist. LEXIS 6191,* No. 92 Civ. 6411, 1994 WL 184670, at *5 (S.D.N.Y. May 12, 1994) (granting summary judgment for defendant where allegedly discriminatory program adopted by defendant in New York impacted plaintiff's employment in Connecticut), *aff'd, 110 F.3d 898 (2d Cir. 1997); Duffy, 1998 WL 252063, at *12* (dismissing City HRL claim where decision to fire plaintiffs was made in New York City and plaintiffs worked outside New York City). To determine the location of the discrimination, courts have looked to the location of the impact of the offensive conduct. *See Casper, 1998 WL 150993, at *5* (dismissing claims under City HRL where plaintiffs employed in Garden City, and sexually [*51] explicit comments made to New York City impacted on plaintiffs in the Garden City office);

Case 2:08-cv-03760-JS -WDW Document 11 Filed 11/20/08 Page 33 of 43

Page 14
1999 U.S. Dist. LEXIS 15551, *51; 81 Fair Empl. Prac. Cas. (BNA) 873

*Lightfoot*, 1994 WL 184670, at *5; *Duffy*, 1998 WL 252063, at *12; *Launer v. Buena Vista Winery, Inc., 916 F. Supp. 204, 213 (E.D.N.Y. 1996)* (sustaining City HRL claims where plaintiff maintained office in New York City boundaries, defendant faxed plaintiff memorandum with discriminatory remarks to plaintiff's New York office and plaintiff was fired in New York).

In *Casper*, plaintiffs, who were employed in Garden City, New York, alleged that defendants made sexually explicit broadcasts through an interoffice microphone system from an office in Garden City, New York, to New York City, New York. *Id.* In addition, plaintiffs alleged that defendants answered plaintiffs' telephones, where calls were placed from New York City, with offensive language. *Id.* The court held that the sexually explicit comments and vulgar remarks had an impact on the plaintiffs solely at the Garden City office. The court stated, "The alleged violations of the Administrative Code were the quid pro quo and hostile environment sexual harassment claims, and the constructive [*52] discharge and retaliatory discharge claims, all of which impacted the plaintiffs in Garden City." *Id.* Although the *Casper* court noted that plaintiffs did not allege that the statements were made to them in New York City, offensive remarks or conduct alone within the New York City may not be sufficient. *Cf. Launer, 916 F. Supp. at 213* (plaintiff maintained office in New York City boundaries, was subjected to discriminatory remarks at plaintiff's New York office and plaintiff was fired in New York). In *Launer*, plaintiff Launer maintained an office in New York City where he was regularly contacted by his employer. *Id. at 207.* Launer alleged that his employer made discriminatory remarks to him and faxed Launer a memo with allegedly discriminatory remarks to his office in New York City. *Id. at 214.* In addition, Launer was fired in New York City. *Id.* The court held that Launer stated a claim under the City HRL.

In this case, while the alleged remarks and conduct may have originated within the boundaries of New York City, plaintiffs have failed to allege that the whole or substantial part of the discrimination occurred in New [*53] York City. Like *Casper*, here, the alleged violations of the Administrative Code are hostile environment, constructive discharge and retaliation, failure to promote and denial of overtime or benefits claims. These Plaintiffs concede that they are not employed in New York City, (Pl. Mem. at 20), and allege the offensive acts occurred on isolated occasions in New

York City. Unlike *Launer*, plaintiffs do not allege that they were subject to any adverse employment action in New York City, such as termination, denial of overtime pay, benefits or promotions. Furthermore, even if the isolated incidents in New York City contributed to a hostile work environment, the plaintiffs' work environment is in Elmsford, New York, not New York City.

Accepting plaintiffs' allegations as true, I conclude that plaintiffs were not discriminated against within the boundaries of New York City because the impact of the conduct, if any, was felt on their employment in Westchester County. Plaintiffs' tangential contacts with New York City, even if within the scope of their employment, cannot support claims under the City HRL.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied [*54] in part as follows:

> (a) as to Count I, defendants' motion to dismiss the Human Rights Law claims marked "X" in Chart B included in Exhibit E to the Affidavit of Michael J. DiMattia in Support of KLM's Motion to Dismiss, sworn to Jan. 8, 1998 ("DiMattia Aff. Ex. E") is granted; defendant Wagemans' motion to dismiss all other Human Rights Law claims against him is denied except as described below; defendants' motion to dismiss the Title VII claims marked "X" in Chart C included in DiMattia Aff. Ex. E is granted; defendants' motion to dismiss the hostile environment, retaliation, failure to promote, denial of overtime and benefits claims marked "X" in Chart D included in DiMattia Aff. Ex. E is granted; defendant Wagemans' motion to dismiss all Title VII claims against him is granted; defendants' motion to dismiss the City HRL claims is granted;

> (b) as to Count II, Wagemans' motion to dismiss the hostile environment claims of Rota, Kane, Conca, Cocozzo, Yagnik, Maier and Tricoli is granted;

> (c) as to Count III, Wagemans' motion to dismiss the retaliation claims of the

1999 U.S. Dist. LEXIS 15551, *54; 81 Fair Empl. Prac. Cas. (BNA) 873

sixteen plaintiffs named in footnote 8, *supra*, is granted;

(d) as to Counts IV and V, defendants' [*55] motion to dismiss the assault and battery claims of plaintiffs Salvatore, Rota, Fruhling, Kane, Dern, Gouskos, Peterkin, Brosnan, McGrath, Tricoli and Gore is granted;

(e) as to Count VI, KLM's motion to dismiss the intentional infliction of emotional distress claims is granted as to all plaintiffs and Wagemans' motion to dismiss the intentional infliction of emotional distress claims is granted as to

all plaintiffs except Kroner and Benaissa;

(f) as to Count VII, KLM's motion to dismiss is granted; and

(g) as to Count VIII, KLM's motion to dismiss is granted.

SO ORDERED:

DATED: New York, New York

Sept *30*, 1999

LORETTA A. PRESKA, U.S.D.J.

LEXSEE 1999 US APP LEXIS 8219

**John E. Raum, Plaintiff-Appellant, -v.- Laidlaw Ltd.; Laidlaw Waste Systems, Inc.; Joseph Johnston; David Barletta, Defendants-Appellees.**

**98-9091**

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

*1999 U.S. App. LEXIS 8219*

**April 23, 1999, Decided**

**NOTICE:** [*1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *1999 U.S. App. LEXIS 13064.*

**PRIOR HISTORY:** Appeal from the United States District Court for the Northern District of New York (Scullin, J.).

**DISPOSITION:** AFFIRMED.

**COUNSEL:** APPEARING FOR APPELLANT: JOHN E. RAUM, pro se, East Syracuse, NY.

APPEARING FOR APPELLEES: SAMARA KLINE, Dallas TX, (Dan Hartsfield, Pennie Peck, Baker & Botts, L.L.P., Dallas, TX; Anne W. Salisbury, Baker & Botts, L.L.P., New York, NY; John Valentino, Green & Seifer, Syracuse, NY, on the brief).

**JUDGES:** PRESENT: HON. ELLSWORTH A. VAN GRAAFEILAND, HON. DENNIS JACOBS, Hon. CHESTER J. STRAUB, Circuit Judges.

**OPINION**

**SUMMARY ORDER**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court is **AFFIRMED**.

John E. Raum filed a complaint in the New York Supreme Court, County of Onondaga, against Laidlaw, Ltd., Laidlaw Waste Systems, Inc., Joseph Johnston, and David Barletta (collectively "Laidlaw"), asserting (1) a state law [*2] claim of unlawful discharge, and (2) sexual harassment in violation of Title VII, *42 U.S.C. § 2000e et seq.* ("Title VII"), and the New York Human Rights Law ("NYHRL").

Raum was hired by Laidlaw in 1991. He alleges that beginning in November 1995, Johnston, his supervisor, repeatedly subjected him to obscene gestures and comments which caused Raum embarrassment and humiliation. Raum complained to Barletta, his manager, about this conduct on several occasions; however, Barletta failed to investigate the charges or to take any remedial action. Raum was fired in 1996 for alleged insubordination. He did not allege that he was terminated in retaliation for making a sexual harassment complaint to his manager.

Laidlaw removed the action to the United States District Court for the Northern District of New York pursuant to *28 U.S.C. § 1446(b).* The district court granted Laidlaw's motion to dismiss Raum's complaint pursuant to *Fed. R. Civ. P. 12(b)(6),* finding that Raum failed to allege facts sufficient to support a hostile work environment claim under Title VII or the NYHRL. The district court declined to exercise supplemental jurisdiction [*3] over Raum's remaining state law claim for unlawful discharge, under *28 U.S.C. § 1367(c)(3).*

We review the district court's dismissal *de novo,* "taking all well-plead factual allegations as true." *Leeds*

*v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).*

The Supreme Court recently held that Title VII's prohibition against discrimination based on sex includes the protection against same sex harassment. *See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998).* To state a hostile work environment claim under Title VII, a plaintiff must allege that "the workplace [was] permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)* [*4] (internal quotation marks and citations omitted). Under *Oncale,* a plaintiff must allege "that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination ... because of ... sex.'" *118 S. Ct. at 1002.* The "mere utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997)* (internal quotation marks omitted). These same principles apply to hostile work environment claims brought under state law. *See Espaillat v. Breli Originals, Inc., 227 A.D.2d 266, 268, 642 N.Y.S.2d 875, 877 (1st Dep't 1996); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1304 n.4 (2d Cir. 1995).*

In the present case, the alleged conduct was neither tinged with offensive sexual connotations nor did it suggest that Raum was being targeted based on his gender. *See Oncale, 118 S. Ct. at 1002.* Johnston's alleged remarks do not suggest sex discrimination, but are "mere utterances" engendering offensive feelings in [*5] Raum. *Schwapp, 118 F.3d at 110.* Moreover, Raum failed to allege facts suggesting that his workplace was "permeated with discriminatory intimidation" or that the conditions of his employment were adversely affected. *Harris, 510 U.S. at 21* (internal quotation mark omitted). In sum, while Johnston's alleged remarks may have been crass and offensive, they were not predicated on Raum's gender and therefore not actionable under Title VII.

In his appellate brief, Raum suggests, for the first time, that Johnston's obscene gestures and comments amounted to sexual advances which somehow exploited his uneasiness about homosexuality. We decline to consider this issue because it was raised for the first time on appeal. *See Singleton v. Wulff, 428 U.S. 106, 120-21, 49 L. Ed. 2d 826, 96 S. Ct. 2868 (1976).*

Raum also challenges the district court's dismissal of his unlawful discharge claim. Pursuant to *28 U.S.C. § 1367(c)(3),* a district court may decline to exercise supplemental jurisdiction over a claim if "the district court [*6] has dismissed all claims over which it has original jurisdiction." Where, as here, the district court properly dismissed Raum's Title VII claim, dismissal of the remaining state law claim was also proper.

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED.**

LEXSEE 2006 US DIST LEXIS 89242

**WALLACE BORSKI, Plaintiff, -- against -- STATEN ISLAND RAPID TRANSIT, Defendant.**

04 CV 3614 (SLT) (CLP)

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2006 U.S. Dist. LEXIS 89242; 99 Fair Empl. Prac. Cas. (BNA) 778; 88 Empl. Prac. Dec. (CCH) P42,633*

**December 11, 2006, Decided**
**December 11, 2006, Filed**

**COUNSEL:** [*1] For Wallace Borski, Plaintiff: Thomas F. Bello, LEAD ATTORNEY, Thomas F. Bello, Esq. P.C., Staten Island, NY.

For Staten Island Rapid Transit, Defendant: Richard Schoolman, LEAD ATTORNEY, New York Transit Authority, Law Dept., Brooklyn, NY.

**JUDGES:** SANDRA L. TOWNES, United States District Judge.

**OPINION BY:** SANDRA L. TOWNES

**OPINION**

**MEMORANDUM and ORDER**

**TOWNES, United States District Judge:**

Plaintiff Wallace Borski ("Plaintiff" or "Borski") brings this action against Staten Island Rapid Transit Operating Authority ("SIRTOA" or "Defendant") alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C. § 2000e et seq.,* and New York State Executive Law *§ 296.* [1] Defendant moves to dismiss Plaintiff's complaint pursuant to *Fed. R. Civ. P. 12(b)(6).* For the reasons set forth below, Defendant's motion is granted in part and denied in part.

> 1   In a letter to the Court, dated February 22, 2005, Plaintiff withdrew his claims under *42*

*U.S.C. § 1981, 42 U.S.C. § 1983,* and the Administrative Code of the City of New York.

[*2] **BACKGROUND**

The following facts are drawn from Plaintiff's complaint and are deemed to be true for the purpose of this motion to dismiss. Wallace Borski, a man, was employed with SIRTOA as a Senior Sub-Station Maintainer. (Compl. PP 2, 15.) While employed with SIRTOA, Borski alleges that he "became the target of unwarranted and unwelcome sexual innuendos." (Compl. P 16.) Plaintiff also alleges that various "sexually explicit material was routinely passed around the Defendant's office." (Compl. P 16.) According to Borski, his supervisor, Martin Gearns, "wrote derogatory, vile, and insulting material on company stationary and posted it on a bulletin board." (Compl. P 18.) Plaintiff alleges that he "complained to Management regarding these various instances and advised Defendant of the harassment and discrimination he was routinely subjected to," but "Defendant failed to take any action with respect to Plaintiff's complaints." (Compl. PP 17, 19.) Plaintiff alleges that he then became the "victim of retaliation on a daily basis" due to his complaints to management. (Compl. P 20.) Finally, Plaintiff alleges that "his work environment became so hostile and intolerable that Plaintiff [*3] was forced to resign from his position." (Compl. P 21.) Plaintiff alleges that if Defendant had taken "action against the proper agents," the discriminatory treatment would have ceased. (Compl. P 22.) Plaintiff alleges he was forced to retire on or about July 15, 2003. (Compl. P 3.)

Case 2:08-cv-03760-JS -WDW Document 11 Filed 11/20/08 Page 40 of 43

Page 2

2006 U.S. Dist. LEXIS 89242, *3; 99 Fair Empl. Prac. Cas. (BNA) 778;
88 Empl. Prac. Dec. (CCH) P42,633

Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was received on January 26, 2004, alleging claims of sex discrimination and retaliation. [2] (*See* Pl. EEOC charge.) In support of his claims, Plaintiff attached the allegedly "vile and insulting materials" to his EEOC charge. These materials consist primarily of a series of cartoons. Some are sexual in nature and include advertisements for sexually explicit DVDs and phone sex services. Others include magazine photos altered to portray enlarged body parts. Several of the cartoons make fun of the way that Mr. Borski dresses, including some that insinuate he wears women's clothes. Other cartoons appear to be mocking Mr. Borski for being stupid, lazy and an office gossip, while others appear to mock him for his ethnicity (Polish). Plaintiff received a Notice of Right to Sue from the [*4] EEOC on May 25, 2004, and filed the instant action in August 2004.

> 2    An aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act. Borski filed his discrimination charge with the EEOC on January 26, 2004; thus, the limitations period in his case began on April 1, 2003.

> In the case of a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, the Court may consider "the entire time period of the hostile environment." *AMTRAK v. Morgan, 536 U.S. 101, 117, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).* Borski does not allege specific dates for the incidents he describes in his Complaint, although he said he was forced to resign on or about July 15, 2003. Because Defendants make no specific statute of limitations argument, for the purposes of analyzing Borski's sex discrimination claim, the Court will assume one sexually harassing act took place between April 1, 2003 and July 15, 2003, and therefore consider the entire time period of the hostile environment.

[*5] **DISCUSSION**

*A. Legal Standard*

On a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)*, the Court must accept "as true the facts alleged in the complaint," *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697, 699 (2d Cir. 1994)*, and may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thomas v. City of New York, 143 F.3d 31, 36-37 (2d Cir. 1998)* (citations omitted). The question for the Court "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996)* (internal quotation marks and citations omitted). All reasonable inferences are to be drawn in the plaintiff's favor. *Shah v. Meeker, 435 F.3d 244, 248 (2d Cir. 2006).*

While a plaintiff's allegations must provide the starting point for a Court's evaluation of a motion to dismiss, the Court may also consider documents attached to the complaint or incorporated [*6] by reference. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).* In addition, the Court may consider allegations made in the EEOC charge and supporting materials. *See Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)* (noting that the court would treat plaintiff's allegations in her EEOC affidavit as an integral part of her pleadings); *see also James v. Federal Reserve Bank of New York, 2005 U.S. Dist. LEXIS 43493, No. 01-1106, 2005 WL 1889859, at *1 n.2 (E.D.N.Y. Aug. 8, 2005)* (noting that the court may consider EEOC charge when deciding motion to dismiss).

*B. Plaintiff's Sex Discrimination Claim*

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's. . . sex." *42 U.S.C. § 2000e-2(a)(1).* [3] In *Meritor Savings Bank, FSB v. Vinson,* the Supreme Court made plain that Title VII's prohibition of sex discrimination extends to sexual harassment. [4] [*7] *477 U.S. 57, 63-68, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986); see also Petrosino v. Bell Atlantic, 385 F.3d 210, 220 (2d Cir. 2004).* To prevail on a claim of sexual harassment based on a hostile work environment, a plaintiff must establish: (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work

Case 2:08-cv-03760-JS -WDW Document 11 Filed 11/20/08 Page 41 of 43

Page 3

2006 U.S. Dist. LEXIS 89242, *7; 99 Fair Empl. Prac. Cas. (BNA) 778;
88 Empl. Prac. Dec. (CCH) P42,633

environment; and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Petrosino, 385 F.3d at 221.*

> 3  The Court considers Borski's state law claim in tandem with his Title VII claim because New York courts rely on federal law when determining claims under the New York Human Rights Law. *Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1177 (2d Cir. 1996); see also Soliman v. Deutsche Bank AG, No. 03-104, 2004 U.S. Dist. LEXIS 9087, 2004 WL 1124689, at *10, n.3. (S.D.N.Y. May 20, 2004)* (evaluating plaintiff's state law claim in tandem with Title VII claim in same-sex harassment analysis); *Reissner v. Rochester Gas & Elec. Corp., No. 02-6353, 2004 U.S. Dist. LEXIS 8019, 2004 WL 941645, at *8 (W.D.N.Y. April 22, 2004)* (same).

[*8]

> 4  Although Plaintiff alleges a claim of sex discrimination, his claim is properly construed as a sexual harassment claim. Under Title VII, two forms of sexual harassment are recognized. Quid pro quo harassment "involves the conditioning of concrete employment benefits on sexual favors," while hostile environment harassment does not involve economic benefits, but "creates a hostile or offensive working environment." *Meritor, 477 U.S. at 62.* The allegations in Plaintiff's Complaint can be construed as a hostile environment claim.

In *Oncale v. Sundowner Offshore Services, Inc.,* the Supreme Court held that sex discrimination consisting of same-sex harassment is actionable under Title VII. *523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998).* To show sex discrimination has occurred, a plaintiff alleging male-female or female-male harassment may take advantage of certain inferences which are not available in the same-sex context. *Ciccotto v. LCOR, Inc., No. 99-11646, 2001 U.S. Dist. LEXIS 1125, 2001 WL 514304, at *4 (S.D.N.Y Jan. 31, 2001).* For example, where the challenged [*9] conduct involves explicit or implicit proposals of sexual activity, "it is reasonable to assume those proposals would not have been made to someone of the same sex." *Id.* (quoting *Oncale, 523 U.S. at 81); see also Blozis v. Mike Raisor Ford, Inc., 896 F. Supp. 805, 807 (N.D. Ind. 1995)* ("When a man touches a woman in a sexual manner, or asks her to have sexual relations with him, it can be assumed that he is doing so

because she is a woman."). In same-sex harassment cases, however, similar inferences about a harasser's motivations may not be considered reasonable. *See Oncale, 523 U.S. at 81* ("The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual.").

In *Oncale,* the Supreme Court suggested three evidentiary routes to prove gender-based discrimination in a same-sex harassment case: (1) evidence that the harasser is homosexual and that the harassment is motivated by sexual desire; (2) evidence that the harasser was motivated by general hostility to employees of victim's sex; (3) comparative evidence that the harasser treated employees [*10] of both sexes differently. *Id. at 80-81.* Regardless of what evidentiary route Plaintiff chooses, he must "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *'discrimina[tion]* because of sex.'" *Id. at 81* (emphasis in original) (ellipses omitted). In determining what is actionable under Title VII, the Supreme Court stressed the importance of distinguishing between harassment and discriminatory harassment in order to "ensure that Title VII does not become a general civility code." *Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).*

Reviewing the record and construing all inferences in Plaintiff's favor, there are no allegations in the complaint which, even if proven true, would support a conclusion that such behavior was motivated by Plaintiff's gender. Nothing in the complaint suggests that Borski's supervisor, Martin Gearns, is homosexual or motivated by sexual desire. None of Plaintiff's allegations suggest that any of the alleged conduct was motivated by hatred of men or general hostility towards men, or that the harassers [*11] discriminated between men and women. 5 Plaintiff has failed to provide any evidence that the alleged conduct was based on his sex.

> 5  Indeed, Plaintiff states in his Opposition Brief that there were no women in his workplace. (Pl. Opp. at 5). It would therefore be impossible for him to show disparate treatment between men and women.

Plaintiff argues that he should not be precluded from redress because he works in an all-male environment. He argues that a workplace replete with sexual harassment, innuendo or other related conduct can offend a man or a

woman in the same manner. Plaintiff's argument fails on two fronts. First, plaintiffs working in single-sex environments have never been prevented from redress under Title VII. *See Oncale, 523 U.S. at 77, 82* (holding that plaintiff could bring same-sex harassment suit even though he worked in an all-male environment). Second, the Supreme Court has "never held that workplace harassment, even harassment between men and women, is automatically discrimination [*12] because of sex merely because the words have sexual content or connotations." *Id. at 80.* "The critical issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (quoting *Harris v. Forklift Systems, Inc. 510 U.S. 17, 25, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).*

Plaintiff has not made any allegations in his complaint that indicate that men at his workplace were exposed to disadvantageous terms or conditions of employment as compared with women, or that he was exposed to disadvantageous terms or conditions because he is a man. "A reasonable trier of fact might find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility toward women." *Oncale, 523 U.S. at 80.* Plaintiff has not alleged that here. Plaintiff's factual allegations in the Complaint, at best, establish personal animus against Mr. Borski by his co-workers and supervisors and not gender-based animus against men or animus towards Mr. Borski [*13] because he is a man.

Furthermore, Plaintiff's reliance on *Petrosino v. Bell* in support of his argument is misplaced. *385 F.3d 210 (2d Cir. 2004).* In *Petrosino,* a female working in a predominantly male environment brought a sexual harassment claim against her employer. The working environment at issue was very sexually charged and described as being "more reminiscent of a locker room than a place of business." *Id. at 214.* Both men and women were exposed to profanity, offensive comments and sexually explicit graffiti on the job site. *Id.* The Second Circuit stated that the available evidence would permit a jury to conclude that a reasonable person, regardless of gender, would consider the sexually offensive comments and graffiti here at issue more offensive to women than to men and, therefore, discriminatory based on sex. *Id. at 222-23.* The Court

based its reasoning on the fact that insults were directed at certain men, not men as a group, whereas the depiction of women in the offensive jokes and graphics was uniformly sexually demeaning to women as a group and communicated the message that women as a whole were available for [*14] sexual exploitation by men. *Id.* In Plaintiff's case, however, the insults and demeaning remarks were not directed to men as a whole, but only to certain men, specifically Borski.

Courts in this circuit have dismissed sexual harassment claims outright when the alleged harassment did not relate to the plaintiff's gender. *See Ciccotto, 2001 U.S. Dist. LEXIS 1125, 2001 WL 514304, at *6-7.* In the instant action, Plaintiff has not alleged any facts in the Complaint that indicate he was discriminated against because of his sex. Therefore, his sexual discrimination claim must be dismissed.

## C. Plaintiff's Retaliation Claim

Borski also asserts that Defendant retaliated against him in violation of Title VII, which provides that "[i]t shall be unlawful employment practice for an employer to discriminate against any of his employees...because [such employee] has opposed any practice made unlawful practice by this subchapter." *42 U.S.C. § 2000e-3(a).* [6] "To establish a prima facie case of retaliation, an employee must show '[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] [*15] a causal connection between the protected activity and the adverse employment action.'" *Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998)* (quoting *Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995)).* At this stage of the case, the plaintiff is only required to give fair notice of the retaliation claim and the grounds upon which it rests in order to defeat the present motion. *See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); see also Baldwin v. LIJ North Shore Health Sys., 392 F. Supp. 2d 479, 483 (E.D.N.Y. 2005).*

> 6    The Court considers Borski's state law retaliation claim in tandem with his Title VII claim because New York courts look to federal law when analyzing claims of retaliation under the New York Human Rights Law. *See Reed, 95 F.3d at 1177.*

The Court finds that, at this stage, Plaintiff has

2006 U.S. Dist. LEXIS 89242, *15; 99 Fair Empl. Prac. Cas. (BNA) 778;
88 Empl. Prac. Dec. (CCH) P42,633

sufficiently pled the first prong of a retaliation claim. For Plaintiff's [*16] conduct to constitute participation in a protected activity, it is enough that he has made "informal protests of discrimination, including making complaints to management," *Gregory, 243 F.3d at 700-01*, which Plaintiff alleges he has done. Defendants incorrectly argue that Plaintiff could not have been engaging in protected activity when he complained to management because his allegations of harassment did not make out a claim of sex discrimination. However, "an employment practice need not actually violate Title VII for the protected activities element of a retaliation claim to be satisfied. The plaintiff is only required to have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." *McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001); see also Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 134 (2d Cir. 1999)*. Whether a plaintiff's belief is reasonable must be assessed in light of the totality of the circumstances. *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998)*. Drawing all inferences in Plaintiff's favor, the [*17] Court finds that Plaintiff's belief was reasonable.

Plaintiff has also properly pled the second element of a retaliation claim. An employment action is adverse if it causes an employee to endure a "materially adverse change" in terms and conditions of his employment. *Galabya v. New York City Bd. Of Educ., 202 F.3d 636, 640 (2d Cir. 2000)*. "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices...unique to a particular situation." *Id.* (quoting *Crady v. Liberty Nat. Bank and Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993))*. Adverse employment actions may include an actual termination of the plaintiff's employment by the employer or a "constructive" discharge. *Fitzgerald v. Henderson, 251 F.3d 345, 357 (2d Cir. 2001)*. Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit. *Chertkova v. Connecticut General Life Ins. Co.,*

*92 F.3d 81, 89 (2d Cir. 1996)*. [*18] Plaintiff alleges that "his work environment became so hostile and intolerable that Plaintiff was forced to resign from his position." The Court construes this as a constructive discharge claim; therefore, Plaintiff has properly pled the second element of a retaliation claim.

As to the third element, the Court finds that additional discovery is appropriate to determine if any causal connection exists between Plaintiff's complaints of harassment and the adverse employment action. *See Washington v. Coney Island Hosp., No. 04-4096, 2006 U.S. Dist. LEXIS 79878, 2006 WL 3337513, at *6 (E.D.N.Y. Oct. 31, 2006)* (finding that Plaintiff should be given the opportunity to conduct discovery on whether a causal connection exists instead of dismissing retaliation claim on *12(b)(6)* motion); *McCalla v. SUNY Downstate Medical Center, No. 03-2633, 2006 U.S. Dist. LEXIS 38175, 2006 WL 1662635, at *8 (E.D.N.Y. June 8, 2006)* (finding that arguments on sufficiency of retaliation allegations more appropriate for summary judgment following discovery). At this stage, under the standard set out in *Swierkiewicz,* the plaintiff is only required to give fair notice of the retaliation claim and the grounds upon which it rests. [*19] *See Leibowitz v. Cornell University, 445 F.3d 586, 591 (2d Cir. 2006)*. The Court finds Plaintiff has done so. Therefore, Defendant's motion to dismiss Plaintiff's claim of retaliation is denied.

## CONCLUSION

For the reasons set forth above, the Defendant's motion to dismiss Plaintiff's discrimination claim is GRANTED and Defendant's motion to dismiss Plaintiff's retaliation claim is DENIED.

## SO ORDERED.

SANDRA L. TOWNES

United States District Judge

Dated: Brooklyn, New York

December 11, 2006