```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
BEN A. ARGEROPOULOS,

                Plaintiff,
     -against-                          MEMORANDUM AND DECISION
                                        08-CV-3760 (JS)
EXIDE TECHNOLOGIES and RAY ABRAMS,

                Defendants.
----------------------------------X
Appearances:
For Plaintiff:      Ismail S. Sekendiz, Esq.
                    Derek T. Smith, Esq.
                    Akin & Smith, LLC
                    305 Broadway, Suite 1101
                    New York, NY 10007

For Defendant:
Ray Abrams          Laura Sack, Esq.
                    Roy P. Salins, Esq.
                    Vedder Price P.C.
                    1633 Broadway, 47th Floor
                    New York, NY 10019

Exide Technologies  Robert J. Toy, Esq.
                    Sidney R. Steinberg, Esq.
                    Post & Schell, P.C.
                    Four Penn Center, 14th Floor
                    1600 John F Kennedy Blvd
                    Philadelphia, PA 19103

                    Brooke Alyse Schneider, Esq.
                    Diane Krebs, Esq.
                    Gordon & Rees, L.L.P.
                    One Liberty Plaza, 23rd Floor
                    New York, NY 10006
```

SEYBERT, District Judge:

Plaintiff Ben A. Argeropoulos commenced this action against Exide Technologies and Ray Abrams (collectively, "Defendants") on September 16, 2008. On December 12, 2008, Plaintiff filed an Amended Complaint. Plaintiff's Amended Complaint alleges causes of action pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e-2, et seq. ("Title VII"), and state law claims for violations of the New York Human Rights Law (the "Human Rights Law"), N.Y. Exec. Law § 296 et seq.

Pending before this Court is: (1) Defendant Exide's Rule 12(b)(6) motion to dismiss counts one, two, four and five of the Amended Complaint, except for the harassment claim based on perceived sexual orientation under the New York Human Rights Law in count one; (2) Defendant Abrams's Rule 12(b)(6) motion to dismiss counts one through three of the Amended Complaint; and (3) Defendant Abrams' Rule 12(b)(1) motion to dismiss counts four and five for lack of subject matter jurisdiction. For the reasons stated herein, Defendants' motions to dismiss are GRANTED. Moreover, the Court sua sponte dismisses Plaintiff's third cause of action against Exide Technologies. Thus, Plaintiff's Amended Complaint is DISMISSED IN ITS ENTIRETY.

## BACKGROUND

The following facts are alleged by Plaintiff and regarded as true for the purpose of this motion. Plaintiff Ben Argeropoulos, a New York resident and U.S. citizen of Greek origin, started working for Exide Technologies as a warehouse worker and an occasional deliveryman in October 2006. Am. Compl. ¶¶ 19, 23, 31. He alleges that he was subjected to discrimination and harassment because of his national origin and perceived sexual orientation. He also alleges that this discrimination and harassment "occurred

on a continual, on-going basis" and that the following are just some examples. Id. ¶ 25. According to Plaintiff, this type of behavior took place on a "daily" basis, in a "continuous and pervasive manner." Id. ¶ 44.

On or around February 20, 2007, co-worker Mike Mileto said "When Ben sees a woman's pussy, he keeps his hands tightly over his eyes, but when he sees a man's cock, he separates his fingers." Id. ¶ 26. On or around February 21, 2007, the Plaintiff alleges the following events transpired: (1) the warehouse manager, Defendant Ray Abrams, smacked Plaintiff in the buttocks with a rolled up component sheet while Plaintiff was bending over to pick something up; (2) Mileto said to the Plaintiff "the manager wants to see your dick" and Abrams followed with "Yeah, whip it out"; (3) Mileto asked Plaintiff "Is it true what they say about Greek people? Do they really like it from behind?"; and (4) later that day, Mileto again asked Plaintiff "Do Greek people really like it from behind?" Id. ¶¶ 26-30.

In addition, on several occasions for which the Plaintiff does not provide a date, the following events transpired: (1) while Plaintiff was driving a forklift to the loading dock to unload a truck, Mileto stated to the truck driver that a co-worker had been fired because "they caught him and [Plaintiff] in the truck together"; and (2) Mileto asked the Plaintiff numerous times "If you have to pick one woman in the office to fuck, who would it be, Sue

3

or Bernadette?" Id. ¶¶ 32, 33.

Around June 2007, Plaintiff spoke with Tony Cioffi, an Exide regional manager, and discussed the ongoing harassment by Mileto and Abrams. Plaintiff explained to Cioffi that he skipped work for two days to avoid the harassment and Cioffi stated that he would speak to Sue Watson, a supervisor, to re-instate Plaintiff's days. Id. ¶ 35. Shortly thereafter, Cioffi and Watson called Plaintiff into the office and Plaintiff again expressed his concerns about the ongoing harassment. Both Watson and Cioffi said they were aware of the problem, but could not do anything about it because "they had to go through 'the process.'" Id. ¶ 37. Plaintiff alleges that the Defendants failed to take appropriate action in response to the complaint and the harassment worsened "[w]hile 'the process' was going on." Id. Additionally, Plaintiff alleges that on numerous occassions he complained to his manager, Joe Leoni, as well as to Watson and Cioffi, but no steps were taken and the discrimination, retaliation and harassment continued. Id. ¶¶ 38-39.

On November 26, 2007, Plaintiff started an injury-related leave of absence from work. Id. ¶ 42. Plaintiff represents that he has no plans to return to work because of the "unbearable [sic] hostile work environment and discriminatory practices of the defendants." Id. ¶ 42. Plaintiff also alleges that, as a result of the discrimination and harassment, he has experienced severe emotional and physical distress and "the loss of income, salary,

bonuses, benefits and other compensation which such employment entails and has suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses." Id. ¶ 60.

On May 27, 2008, Plaintiff filed a charge of discrimination with the Equal Employment Opportunities Commission. Id. at ¶ 20.

## DISCUSSION

### I. Standard of Review Under Rule 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, __ L. Ed. 2d. __ (2009) (reversing the Second Circuit's decision in Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

(internal citations and quotations omitted). Examining whether a complaint states a plausible claim for relief is "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint fails to state a claim. Id. The plaintiff's factual allegations, in short, must show that the plaintiff's claim is "plausible," not merely "conceivable." Id. at 1951.

In applying the plausibility standard set forth in Twombly and Iqbal, a court "assume[s] the veracity" only of "well-pleaded factual allegations," and draws all reasonable inferences from such allegations in the plaintiff's favor. Id. at 1950. Pleadings that "are no more than conclusions," however, "are not entitled to the assumption of truth." Id.

II. Plaintiff's Claims

A. Threshold Issues

As noted above, Plaintiff's Amended Complaint raises both federal and New York state law claims. Under Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), a federal court should generally decline to exercise supplemental jurisdiction over state law claims if a case's federal claims are dismissed in the litigation's "early stages and only state-law claims remain." See also 28 U.S.C. § 1367(c)(3).

6

Accordingly, before discussing Plaintiff's state law causes of action, the Court first turns to Plaintiff's claims, to see whether any are viable.

B. <u>Individual Liability Under Title VII</u>

Plaintiff's fourth and fifth causes of action seek relief against "Defendants" under Title VII. Thus, these causes of action purport to seek relief against Defendant Ray Abrams in his individual capacity. But individuals, such as Abrams, "are not subject to liability under Title VII." <u>Patterson v. County of Oneida, N.Y.</u>, 375 F.3d 206, 221 (2d Cir. 2004) (internal citations and quotations omitted). Accordingly, as against Abrams, Plaintiff's fourth and fifth causes of action are frivolous and must be DISMISSED.

C. <u>Fourth Cause of Action: Discrimination Under Title VII</u>

Plaintiff's fourth cause of action alleges that Defendants "engaged in unlawful employment practices" by "creating a hostile work environment and otherwise discriminating against Plaintiff because of his perceived sexual orientation, national origin and sexual harassment." Amend. Compl. ¶ 76. Construed liberally, this cause of action appears to allege six separate claims: (1) hostile work environment due to Plaintiff's perceived sexual orientation; (2) disparate treatment due to Plaintiff's perceived sexual orientation; (3) hostile work environment due to Plaintiff's Greek national origin; (4) disparate treatment due to Plaintiff's Greek

7

national origin; (5) hostile work environment due to sexual harassment of Plaintiff; and (6) disparate treatment due to sexual harassment of Plaintiff.

Of these six claims, the claims based upon perceived sexual orientation and sexual harassment can be dispatched easily. It is indisputable that "Title VII does not prohibit harassment or discrimination because of sexual orientation." Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005). Ipso facto, this includes claims based upon perceived sexual orientation. Rissman v. Chertoff, 08-CV-7352, 2008 WL 5191394, *2 (S.D.N.Y. Dec. 12, 2008). Accordingly, Plaintiff's Title VII claims based upon his perceived sexual orientation are frivolous and must be DISMISSED.

Title VII does offer protection from sexual harassment, of course. But Plaintiff woefully fails to plead such a claim. Plaintiff and his two alleged harassers, Mileto and Abrams, are male. Thus, Plaintiff must sufficiently plead same-sex harassment. The Supreme Court has instructed that, on summary judgment, a plaintiff who alleges same-sex harassment must come forth with evidence demonstrating that: (1) the harasser was homosexual; (2) the harasser was "motivated by general hostility to the presence of [men] in the workplace; or (3) the harasser "treated members of both sexes [differently] in a mixed-sex workplace." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80-81, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998). Because he is at the motion to dismiss

8

stage, Plaintiff obviously has no evidentiary burden to establish any of those methods. But Plaintiff must still allege enough facts to plausibly plead his harasser's homosexuality or "gender-based animus." Simonton v. Runyon, 232 F.3d 33, 37 (2d Cir. 2000); Borski v. Staten Island Rapid Transit, 04-CV-3614, 2006 WL 3681142, *2-4 (E.D.N.Y. 2006) (treating the evidentiary burden required on summary judgment for same-sex harassment as a pleading burden necessary to survive a motion to dismiss). Here, Plaintiff pleads no such facts. Plaintiff pleads no facts (or, for that matter, even conclusory allegations) to suggest that either Mileto or Abrams are homosexual, have hostility towards men in the workplace, or treat males differently from females. Rather, "accepting as true all the facts that [Plaintiff] has pled, the only inference [the Court] can draw is that he was harassed because of his sexual orientation." Simonton, 232 F.3d at 37. But, as discussed above, Title VII affords no relief for animus directed against one's sexual orientation or perceived sexual orientation. Thus, Plaintiff's Title VII claims predicated on sexual harassment must be DISMISSED.

Plaintiff's Title VII claims predicated on national origin discrimination deserve somewhat more consideration. Unlike with respect to sexual harassment, Plaintiff does at least plead some facts to suggest that he experienced hostility because of his Greek national origin. Specifically, Plaintiff alleges that on February 21, 2007, Mileto asked him "Is it true what they say about Greek

9

people? Do they really like it from behind?" Amend. Compl. ¶ 29. And Plaintiff alleges that Mileto, that same day, "said for the second time 'Do Greek people really like it from behind?'" Amend. Compl. ¶ 30. But, unfortunately for Plaintiff, these two documented incidents fail to establish national origin discrimination under either a disparate treatment or hostile work environment theory.

With respect to disparate treatment, Plaintiff's claim fails because Plaintiff does not plead that he suffered any adverse employment action, much less an adverse employment action that occurred due to Defendants' anti-Greek animus. Plaintiff argues that he suffered an adverse employment action because he was constructively discharged. Pl. Opp. Br. 9. But, as Plaintiff's Amended Complaint makes clear, Plaintiff is <u>still</u> an Exide employee, although he has no plans to return to active work upon the conclusion of his disability leave. Amend. Compl. ¶ 42. Because Plaintiff has not left his Exide employment, he cannot pursue any claims based upon constructive discharge. <u>See</u> <u>Chandler v. AMR American Eagle Airline</u>, 251 F. Supp. 2d 1173, 1179 n.1 (E.D.N.Y. 2003); <u>Brown v. N.Y.S. Dept. of Corr. Servs.</u>, 583 F. Supp. 2d 404, 414 (W.D.N.Y. 2008); <u>Tavoloni v. Mount Sinai Medical Center</u>, 26 F. Supp. 2d 678, 682 (S.D.N.Y. 1998); <u>see</u> <u>also</u> <u>Meder v. City of N. Y.</u>, 05-CV-0919, 2007 WL 1231626, *5 (E.D.N.Y. 2007).

Plaintiff also argues that, even if he did not plead an adverse employment action, the Supreme Court eliminated the

requirement to plead an adverse employment action when it issued its decision in Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). But that opinion does not so hold. As Exide Technologies' brief notes, Burlington held that Title VII's anti-retaliation provisions do not require a plaintiff to allege a materially adverse employment action. See Burlington, 548 U.S. at 64. The part of Title VII that prohibits disparate treatment, however, still does. See, generally, Evarts v. Southern New England Tel. Co., 2006 WL 2864716, *8 (D. Conn. 2006) (recognizing that Burlington's holding is limited to retaliation); Ebanks v. N. Y. C. Dept. of Env. Protection, 05-CV-3172, 2009 WL 891796, *4 (E.D.N.Y. Mar. 31, 2009) (an adverse employment action is part of a prima facie case of disparate treatment). Accordingly, because Plaintiff's Amended Complaint fails to plead that Plaintiff suffered any adverse employment action, Plaintiff's national origin discrimination claim predicated on disparate treatment must be DISMISSED.

Plaintiff's hostile work environment claim predicated on national origin harassment is pled somewhat better, but still fails to survive Defendants' motion to dismiss. To plead a hostile work environment claim Plaintiff must plead facts that would tend to show that "the complained of conduct: (1) is objectively severe or pervasive - that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment

11

that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal citations and quotations omitted). An environment's hostility is assessed based on the "totality of the circumstances," which includes factors such as (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. Id. To survive dismissal under Fed. R. Civ. P. 12(b)(6), a plaintiff must "plead facts sufficient to support the conclusion that [he or] she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." Id. (internal citations and quotations omitted).

Here, Plaintiff does plead two incidents that could arguably be considered national origin harassment. Specifically, Plaintiff alleges that Mileto asked him "Is it true what they say about Greek people? Do they really like it from behind?," and that later that day, Mileto again asked "Do Greek people really like it from behind?" Am. Comp. ¶ 29-30. But a few "isolated incidents," especially when only verbal and not physical, do not suffice to plead a hostile work environment claim. See, e.g., Merhige-Murphy v. Vicon Industries, Inc., 07-CV-1526, 2008 WL 111163, *4 (E.D.N.Y.

Jan. 7, 2008) (dismissing hostile work environment claim predicated on two isolated comments); Brightman v. Prison Health Service, Inc., 05-CV-3820, 2007 WL 1029031, *5 (E.D.N.Y. 2007)(dismissing hostile work environment claim predicated on a "few" incidents over a several year period).

Perhaps recognizing this infirmity, Plaintiff attempts to cure it in two ways. First, Plaintiff alleges that the anecdotes he provided were merely some examples of discrimination that occurred on a "daily and continuous basis because he is Greek." Am. Comp. ¶ 45. When combined with the two anti-Greek statements pled in the Amended Complaint, this kind of non-specific allegation might have enabled Plaintiff's hostile work environment claim to survive under the old "no set of facts" standard for assessing motions to dismiss. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). But it does not survive the Supreme Court's "plausibility standard," as most recently clarified in Iqbal, 129 S. Ct. at 1949-2953. In applying the plausibility standard set forth in Twombly and Iqbal, a court "assume[s] the[] veracity" only of "well-pleaded factual allegations." Id. at 1950. Thus, the Court need not accept as true Plaintiff's conclusory and entirely non-specific allegation that similar conduct occurred on a "daily and continuous basis because he is Greek." Rather, Plaintiff must plead sufficient "factual content" to allow the Court to draw a "reasonable inference" that Plaintiff suffered from a hostile work

13

environment. Iqbal, 129 S. Ct. at 1949. And Plaintiff has not done so. At most, Plaintiff's national origin hostile work environment claim is "conceivable." Id. at 1951. But without more information concerning the kinds of anti-Greek animus directed against Plaintiff, and the frequency thereof, the Court cannot conclude that Plaintiff's claim is "plausible." Id.

Second, Plaintiff contends that "[a]ll of the sexual harassments [sic] claims in the plaintiff's complaint must be linked to his national origin discrimination claims," because of an alleged societal stereotype that all Greek people are homosexual. Pl. Opp. Br. at 14-15. But Plaintiff's argument, if accepted, would itself create an equal protection problem. See U.S. CONST. AMEND. XIV. Under Plaintiff's reasoning, individuals of Greek national origin would have de facto Title VII protection from harassment based upon sexual orientation or perceived sexual orientation – a protection not afforded any other group. This cannot be.

Accordingly, Plaintiff's Amended Complaint fails to state a cause of action for hostile work environment predicated on Plaintiff's national origin, and must be DISMISSED. That being said, the Court recognizes that the Supreme Court's latest Iqbal opinion issued after Plaintiff filed his Amended Complaint. Thus, if Plaintiff wishes to amend his complaint again to re-plead his national origin hostile work environment claim in a manner consistent with Iqbal's requirements, the Court will grant him leave

to amend.

   D.   Fifth Cause of Action: Retaliation Under Title VII

   Plaintiff's fifth cause of action seeks relief under Title VII for retaliation he allegedly suffered "because of Plaintiff's opposition to the unlawful employment practices of Defendants." Amend. Compl. ¶ 79.  Plaintiff, however, fails to plead any facts documenting this alleged retaliation.  At most, Plaintiff claims that, after he complained about the alleged harassment he suffered, "the harassment got worse" and Plaintiff "became the subject of discriminatory retaliation."  Amend. Compl. ¶ 46.  But Plaintiff pleads <u>nothing</u> to document <u>how</u> the harassment "got worse" or <u>how</u> Plaintiff suffered "discriminatory retaliation."  Even before <u>Iqbal</u>, the federal rules required a plaintiff to do more than just plead "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  <u>Twombly</u>, 550 U.S. at 555.  Plaintiff's fifth cause of action woefully fails this test.  Consequently, it is DISMISSED.

   E.   Plaintiff's State Law Claims

   The Court has dismissed all of Plaintiff's federal claims. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismisses them on this basis.  <u>See</u> <u>Carnegie-Mellon University</u>, 484 U.S. at 350. Because Defendant Exide Technologies did not move to dismiss Plaintiff's third cause of action, that cause of action is dismissed

15

sua sponte. Should Plaintiff re-plead viable federal causes of action, Plaintiff may re-plead these claims as well.

III. Rule 11

Under Fed. R. Civ. P. 11(a)(2), an attorney who files pleadings in federal court is presumed to certify that the pleading's "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

Of Plaintiff's claims, the following appear to lack both any basis in "existing law," or any "nonfrivolous argument" for "extending, modifying, or reversing existing law or for establishing new law": (1) Plaintiff's Title VII sexual orientation discrimination claim; and (2) Plaintiff's attempt to hold Abrams personally liable under Title VII. Before filing Plaintiff's original Complaint, Plaintiff's attorneys, Ismail S. Sekendiz and Derek T. Smith, had a professional and ethical obligation to investigate whether such claims could be brought under Title VII. Any such investigation would have revealed that, under longstanding Second Circuit precedent, there is no Title VII liability for sexual orientation discrimination, and no individual liability at all. Had Attorneys Sekendiz and Smith conducted such an investigation, they would not have pled these claims in Plaintiff's original Complaint.

Here, the severity of Attorneys Sekendiz's and Smith's conduct is magnified because these claims did not just appear in Plaintiff's original Complaint, but in Plaintiff's Amended Complaint as well. And this Amended Complaint was filed after Defendants' attorneys filed well-briefed motions to dismiss which explained that these claims are frivolous. Thus, although obligated to do so, as a practical matter Attorneys Sekendiz and Smith did not need to conduct any independent investigation concerning the worth of these claims: they could simply have confirmed the truth of Defendants' representations in Defendants' motion to dismiss papers. Attorneys Sekendiz and Smith failed to do even that, by re-pleading these frivolous claims in Plaintiff's Amended Complaint.

Accordingly, if Defendants had moved for sanctions during briefing on their motion to dismiss, the Court would have been amenable to imposing a reasonable sanction upon Attorneys Sekendiz and Smith, such as the attorneys' fees that Defendants expended to respond to Plaintiff's frivolous claims. And, although that opportunity has now passed, the Court cautions Attorneys Sekendiz and Smith that they should consult Rule 11 prior to re-pleading any of Plaintiff's claims for a second time, including the national origin hostile work environment claim. The Court will accept such a Second Amended Complaint only if it is satisfied that Attorneys Sekendiz and Smith have complied with their Rule 11 obligations. And, should Attorneys Sekendiz and Smith significantly depart from

17

their Rule 11 obligations before this Court again, the Court may even consider imposing Rule 11 sanctions upon them <u>sua</u> <u>sponte</u>.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. Plaintiff's Amended Complaint is DISMISSED. Plaintiff may file a Second Amended Complaint in accordance with the guidelines set forth in this Order. The Second Amended Complaint must be filed within thirty days of the date of this Order. Given this decision, Defendant Exide Technologies' letter motion for leave to file a supplemental brief on its motion to dismiss is DENIED AS MOOT.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
       July 8, 2009